**Clarence Erwin COPELAND,
Plaintiff–Appellant,**

v.

**Mark MACHULIS; James Stephens,
Defendants–Appellees.**

No. 93–2590.

United States Court of Appeals,
Sixth Circuit.

Submitted April 10, 1995.

Decided June 13, 1995.

Clarence Erwin Copeland (briefed), Baraga Maximum Men's Facility, Baraga, MI, for plaintiff-appellant.

Terry L. Norton, Michigan Dept. of Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellees.

Before: MERRITT, Chief Judge; LIVELY and KEITH, Circuit Judges.

PER CURIAM.

Clarence Erwin Copeland, a pro se Michigan prisoner, appeals a district court judgment dismissing his civil rights action for damages filed under 42 U.S.C. § 1983. Copeland alleges that the Property Sergeant at Standish Maximum Correctional Facility, Mark Machulis, and the Acting Assistant Deputy Warden, James Stephens, deprived him of property without due process of law and in violation of equal protection.

Initially, we must decide in this case whether a Michigan prisoner is foreclosed from recovering under 42 U.S.C. § 1983 because he failed to plead and prove that available state law remedies were inadequate to adjudicate his claim. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). The district court granted summary judgment for the defendants. For the following reasons, we affirm.

On June 20, 1992, Phyllis Martin visited the Standish Maximum Correctional Facility in Standish, Michigan. While there, Ms. Martin deposited $50 at the visitors' desk to be placed in Copeland's prisoner account. The money was originally credited to Copeland's account, but was removed after prison officials determined that Ms. Martin had not signed her name on the envelope containing the money. The money was removed from Copeland's account pursuant to a prison policy directive which provides that "[f]unds cannot be sent to a prisoner by unidentified sources." PD–DWA 20.01. Copeland discovered that the $50 had been removed from his account and asked prison officials what he should do to have his money returned. As a result of the advice he received from an Assistant Resident Unit Manager, Copeland had Ms. Martin call the prison to confirm that she left the money at the desk for him. Ms. Martin supported her phone call, as requested by prison officials, with a letter in which she verified that she left the $50 at the visitors' desk to be deposited in Copeland's account.

Instead of returning Copeland's money, however, defendant Mark Machulis conducted an administrative hearing. At the hearing, Machulis concluded that Copeland was still not entitled to the return of the $50 because "the person [who Copeland claimed] left the money for him did not visit him on the day the money was left, however, she did visit another inmate at Standish Maximum Correctional Facility." The defendants did not show, and the record does not reveal, any prison policy directive that authorizes denying money to an inmate because the donor happened to have visited another inmate on the day when the gift was made.

Seeking monetary and declaratory relief, Copeland sued Machulis and Stephens in their individual and official capacities. In his complaint, Copeland claimed that the $50 was wrongfully withheld from his prison account in violation of both his due process and equal protection rights. The magistrate judge recommended denying summary judgment for Machulis and granting summary judgment for Stephens. The district court adopted the recommendation, except for that portion of it which addressed Copeland's claims against Machulis, and instead, granted summary judgment for both defendants.

On appeal, this court reviews a judgment granting summary judgment de novo and uses the same test as used by the district court. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir.1993); *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 887 (6th Cir.1993). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir.1993). The moving party bears the initial burden of establishing an absence of evidence

to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *LaPointe,* 8 F.3d at 378. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ The district court correctly concluded that Copeland's due process claim is barred by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Parratt,* the Supreme Court held that the negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. The doctrine enunciated in *Parratt* has been extended to cover intentional deprivations of property. *Hudson v. Palmer,* 468 U.S. 517, 533–36, 104 S.Ct. 3194, 3203–05, 82 L.Ed.2d 393 (1984). Similarly, this court held in *Vicory,* 721 F.2d at 1066, that in a § 1983 case "claiming the deprivation of a property [or liberty] interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." Thus, the *"Parratt* doctrine" permits dismissal of procedural due process claims brought under 42 U.S.C. § 1983 based on the fact that the state provides the claimant an adequate postdeprivation remedy if: 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. *Zinermon v. Burch,* 494 U.S. 113, 136–39, 110 S.Ct. 975, 988–90, 108 L.Ed.2d 100 (1990); *Mackey v. Dyke,* 29 F.3d 1086, 1092 (6th Cir.1994). If these conditions are present, a procedural due process claim will not be stated unless the plaintiff pleads and

proves that his available state remedies are inadequate to redress the wrong. *Hudson,* 468 U.S. at 531–33, 104 S.Ct. at 3202–04. Here Copeland has not pled or shown that Michigan's judicial remedies are inadequate or that it would be futile to make the argument in the courts of Michigan that prison officials improperly withheld the money from his account. *See Gibbs v. Hopkins,* 10 F.3d 373, 377–78 (6th Cir.1993).

The *Parratt* doctrine applies to Copeland's procedural due process claim because, given the record in this case, we cannot say that he was denied his money in accordance with an established state procedure. The gravamen of Copeland's complaint appears to be twofold. First, *Copeland* alleges that the administrative hearing at which defendant Machulis determined that Copeland was not entitled to receive the money was an aberrant procedure. Such a procedure cannot constitute "established state procedure." More specifically, Copeland does not challenge the original withholding of his money pursuant to the prison policy directive that prohibits gifts of money from unidentified sources. Instead, Copeland complains that the continued deprivation of his money denied him procedural due process, even after his benefactor complied with prison policies. The defendants' conduct was thus a random and unauthorized act. *See Four Seasons Apartment v. City of Mayfield Heights,* 775 F.2d 150, 152 (6th Cir.1985). Second, although the defendants had the delegated authority to remove the money from Copeland's account pursuant to a prison policy directive, nothing exists in the record to suggest that they had the delegated authority to retain the money even after Ms. Martin verified that she was the source of the gift. Therefore, the unpredictable and unauthorized departures from prison policy directives were beyond the State's reasonable control and the state tort remedy is all the process Copeland is due. Any predeprivation procedural safeguards that Michigan did provide, or could have provided, would not address the risk of this kind of deprivation. *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (a post-deprivation or common-law tort remedy may be constitu-

480

tionally adequate where pre-deprivation process is impractical). Copeland's due process claim thus fails if there is an adequate remedy to pursue under state law.

■ Although a state prisoner is not required to exhaust administrative remedies before bringing a § 1983 claim for constitutional claims other than an alleged due process violation, it should be recognized that redress for most prisoner actions, including alleged constitutional violations, is available under the extensive process provided by Michigan state law. Michigan provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver, Mich. Comp. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials.

Furthermore, as a state agency subject to the Michigan Administrative Procedures Act, Mich. Comp. Laws §§ 24.201—.403, the Department of Corrections is subject to numerous state laws relating to prisoner grievances. Mich. Comp. Laws §§ 791.251—.255. Specifically, Mich. Comp. Laws § 791.252 sets out detailed procedures for prisoner hearings after filing of a grievance by the prisoner. Michigan law requires that hearing officers be attorneys and gives them the power to hold formal, adversary proceedings independent from prison administration. Section 791.252 gives the prisoner an opportunity for a hearing without "undue delay," "reasonable notice" of the hearing and an opportunity for each side to present evidence and oral and written arguments on issues of fact.

Section 791.254 requires rehearing upon the request of a party or upon the motion of the Department of Corrections. Rehearing is required for a variety of reasons, including where the prisoner's due process rights were violated or where established procedures were not followed. Mich. Comp. Laws § 791.254.

Finally, Section 791.255 provides for judicial review of a final decision in the state circuit court so long as the prisoner has requested a rehearing of the initial decision. The court has plenary power to review the hearing decision. Discretionary review is available up to the Michigan Supreme Court. The Sixth Circuit has squarely held that the appeal of administrative decisions to the state circuit court provides an adequate remedy for violations of due process for purposes of *Parratt v. Taylor. See Blue Cross and Blue Shield v. Baerwaldt*, 726 F.2d 296, 300 (6th Cir.1984)(Michigan Administrative Procedures Act provides ample opportunity to raise constitutional claims in state court); *cf. Tocco v. Marquette Prison Warden*, 123 Mich.App. 395, 399, 333 N.W.2d 295, 297 (1983)(judicial review section under Michigan Administrative Procedures Act applies to Department of Corrections administrative decisions).

■ At least one federal court has found that these procedures "go[ ] far beyond the requirements of due process." *Branham v. Spurgis*, 720 F.Supp. 605, 608 (W.D.Mich. 1989). These remedies insure that procedural violations that may have occurred at the hearing, like those complained of by plaintiff, can be adequately reviewed and addressed under established constitutional guidelines. *Leonard v. Wallace*, 865 F.Supp. 426, 428 (E.D.Mich.1994).

■ We also conclude that the district court properly granted summary judgment in favor of defendant Machulis on Copeland's claim that he was denied his rights under the Equal Protection Clause of the Fourteenth Amendment. Copeland claimed that two white prisoners were allowed to keep money originally left by unidentified persons in violation of prison regulation, while he was not. In order to establish a violation of the Equal Protection Clause, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977) (proof of equal protection claim). In his affidavit attached to the motion for summary judgment, Machulis averred that he

acted appropriately and in good faith in accordance with his understanding of the statutes, rules, and policies governing the Michigan Department of Corrections. Thus, Machulis disclaimed any discriminatory intention.

■ In turn, Copeland did not present significant probative evidence that racial discrimination or purpose was a factor in the decision to remove $50 from his account. Determining whether invidious discriminatory purpose was a motivating factor demands an inquiry into such circumstantial evidence of intent as may be available. *Village of Arlington Heights,* 429 U.S. at 266, 97 S.Ct. at 563. The circumstantial evidence of defendants' intent is insufficient to infer discriminatory intent. Copeland admitted that an originally unidentified person left $50 at the prison to be deposited in his account. Copeland also concedes that prison policy prohibits unidentified contributions to a prisoner's account. Although the person leaving the $50 was later identified, the defendants nevertheless denied Copeland the money when evidence submitted at an administrative hearing revealed that the donor did not visit Copeland on the day when the money was left at the visitors' desk, although she did visit another inmate.

■ Copeland did not allege discriminatory intent. Rather, he alleged a disparate impact of the prison policy by showing that two white inmates were credited with deposits left by unidentified donors who were later identified. Although disproportionate impact is not irrelevant, *see Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1976), mere disparate impact is insufficient to demonstrate an equal protection violation. *Horner v. Kentucky High School Athletic Ass'n,* 43 F.3d 265, 276 (6th Cir.1994). Copeland's contention, at best, indicates that two white inmates circumvented established prison policy. His allegation does not show a circumstantially suspicious sequence of events leading up to the decision to remove the money from his account. *See Village of Arlington Heights,* 429 U.S. at 267–68, 97 S.Ct. at 564–65.

■ Finally, the district court properly granted summary judgment in favor of defendant Stephens because Copeland sued him only in his supervisory role without showing how Stephens encouraged or condoned the removal of the money in violation of either due process or equal protection. In order to prevail on his claim, Copeland must establish that Stephens is culpable because he was personally involved in taking money out of Copeland's account, *see Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976), or that he otherwise encouraged or condoned others in doing so. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). Copeland's allegation is meritless because it is premised on nothing more than respondeat superior liability which is insufficient to sustain a § 1983 action, *see Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and he has not alleged that Stephens somehow encouraged or condoned others to act illegally. Stephens clearly established that he was not personally involved in the decision to remove money from Copeland's account in his affidavit where he averred that he received a letter from Copeland appealing a decision on a "Notice of Intent" hearing. Stephens, however, stated that he reviewed the decision only in response to Copeland's request, not because he was part of the appeal process. Stephens also averred that he informed Copeland that he reviewed the hearing findings and agreed with the decision of the hearing officer. In his affidavit, Stephens specifically stated that as Acting Assistant Deputy Warden of Operations, he supervises the housing units and program activities, but that he is not responsible for all operational procedures. Thus, he disclaimed any official responsibility for encouraging or condoning the hearing officer's decision.

Accordingly, the judgment of the district court is affirmed.