Mark E. WOLFE, Plaintiff,

v.

The VILLAGE OF BRICE,
OHIO, Defendant.

No. 95CV00894.

United States District Court,
S.D. Ohio,
Eastern Division.

March 11, 1999.

Eric P. Rotondo, Columbus, OH, for Plaintiff.

David W. Telford Carroll, Columbus, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

This matter is before the Court on the parties' opposing Motions for Summary Judgment on Plaintiff's Second Amended Complaint. Plaintiff Mark E. Wolfe brought this action against Defendant, the Village of Brice, Ohio ("the Village"), originally challenging the constitutionality of a 1994 Village ordinance ("Ordinance 7–94") which regulated the location and operation of adults-only bookstores. This Court found that Ordinance 7–94 unconstitutionally violated the First Amendment, and the case was set for trial on the issue of damages. Later, the Court granted Plaintiff leave amend his Complaint. Plaintiff's Second Amended Complaint alleges that a 1996 Village ordinance ("Ordinance 2–96"), which was instituted to replace Ordinance 7–94, violates the First Amendment. Plaintiff seeks declaratory judgment, injunctive relief, and damages as well as attorneys' fees. This Court's jurisdiction is pursuant to 28 U.S.C. § 1331.

### I.

Plaintiff is the owner of property located at 2895 Brice Road, within the tiny Village of Brice, Ohio. The property consists of improved real estate upon which a commercial building is located. Prior to Plaintiff's ownership of the property,[1] the building housed the only adult bookstore within the Village. The use of the property for this purpose was permitted under the Village's zoning ordinances in effect at that time. However, in 1991, the continued use of the property for any purpose was enjoined for one year by the Franklin County Court of Common Pleas on the basis that the use of the property as an adult bookstore was a nuisance. The adult bookstore did not reopen after the one year injunction expired.

In 1994, the Village enacted Ordinance 7–94, which, among other things, prohibited the operation of adult entertainment facilities, including adult bookstores, within 1000 feet of churches and schools and within 300 feet of any residential area. Plaintiff's property is located within 1000 feet of a church and school. In January 1995, Plaintiff rented space in his building to a tenant who either opened or intended to open an adult bookstore. Defendant contends that the bookstore never opened after the tenant was informed that the location was within the 1994 Ordinance's area of prohibited operation. Plaintiff, however, asserts that the bookstore did in fact open briefly in January 1995, but closed down after he was informed of the location violation. Plaintiff has not rented the property since 1995.

In 1996, the Village passed Ordinance 2–96, changing the restriction on adult entertainment facilities from within 1000 feet to within 750 feet of a church or school. Like Ordinance 7–94, the preamble to Ordinance 2–96 sets forth justifications for the new regulation; for example, the Village stated that it wished to avoid detrimental effects on existing neighborhoods, excessive noise levels and similar secondary adverse effects attributed to the operation of adults-only businesses. Unlike Ordinance 7–94, which effectively foreclosed adult entertainment facilities on *all* commercial property in the Village, Ordinance 2–96 leaves 27% of the commercial property in the Village of Brice available to be used for adult entertainment. It is undisputed that Plaintiff's property lies within 750 feet of a church and school, and his 1995 tenant's proposed use is prohibited under the 1996 ordinance.

Plaintiff commenced the instant action in September 1995, challenging the constitutionality of Ordinance 7–94 and alleging a deprivation of his rights under 42 U.S.C. § 1983. On March 17, 1998, the Court found that Ordinance 7–94 was unconstitutional, and set the case for trial on the issue of damages. On April 19, 1998, Plaintiff amended his complaint to allege that Ordinance 2–96 is also unconstitutional. Both parties now move for summary judgment on the issue of the constitutionality of the 1996 ordinance.

---

**1.** Prior to 1993, Plaintiff's ex-wife owned the property.

## II.

Fed.R.Civ.P. 56 © provides in relevant part that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a movant's motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). Further, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The necessary inquiry for this Court in determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

In the instant matter, both Plaintiff and the Village move for summary judgment. For either side to obtain summary judgment, there can be no genuine issue of material fact. To determine which facts are material, this Court looks to that law applicable to the regulation of adults-only businesses.

## III.

### A. The 1996 Ordinance Does Not Violate the First Amendment

Plaintiff contends that the 1996 Ordinance is unconstitutional, but sets forth no legal authority or analysis to support this claim. The Court agrees with Defendant in that Ordinance 2–96 meets the standards set forth in the seminal case of *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and therefore is a constitutionally valid regulation.[2]

2. The 1996 ordinance provides, in part:

(A) No person shall permit, operate or cause to be operated a sexually oriented business in any zoning district other than general commercial, as defined and described in the village zoning code.

(B) No person shall permit, operate or cause to be operated a sexually oriented business within 750 feet of:
(1) a church, synagogue, mosque, temple or building which is used primarily for religious worship and related religious activities;

 Although regulations designed to restrain speech on the basis of content presumptively violate the First Amendment, the Supreme Court concluded in *Renton* that "so-called 'content-neutral' time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. 925. A village's zoning regulations are content-neutral when its "predominate concerns" are the secondary effects of adult theaters, and not the content of the films themselves. *Id.* The Court identified acceptable governmental zoning interests: "to prevent crime, protect the city's retail trace, maintain property values, and generally 'protect and preserv[e] the quality of [the city's] neighborhoods, commercial district, and the quality of urban life.'" *Id.* at 48, 106 S.Ct. 925. While zoning ordinances must be narrowly drawn, a least-restrictive means analysis is not required. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Bamon Corp. v. Dayton,* 730 F.Supp. 80, 84 n. 5, 89 (S.D.Ohio 1990).

 In establishing its intent to address the secondary effects—an intent that must be made express—a city may rely upon studies and evidence "generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925; *see also CLR Corp. v. Henline,* 702 F.2d 637 (6th Cir.1983) (requiring factual justifications). Finally, it is not necessary that the sites in which a city permits location of adults-only businesses be economically viable; all that is required is that a city not foreclose residents from a reasonable opportunity to open such a facility in the city. *See Renton,* 475 U.S. at 53–54, 106 S.Ct. 925 ("In our view, the First Amendment requires ... that [the city] refrain from effectively denying [the owners of adult theaters] a reasonable opportunity to open and operate an adult theater within the city").

 The Village of Brice's 1996 ordinance passes constitutional muster under *Renton* because it is a content-neutral time, place and manner regulation, designed to serve a substantial governmental interest and which does not unreasonably limit alternative avenues of communication. Before enacting Ordinance 2–96, the Village held an extensive public hearing in which it reviewed evidence of the effects of sexually oriented businesses. The evidence included studies generated by other cities regarding potential secondary effects of adult businesses. Based on this research and fact-finding, the ordinance's preamble states that the Village's zoning plan is based on concerns such as the health, safety and welfare of the patrons of sexually-oriented businesses as well as the citizens of the village; the frequency of prostitution and casual sexual relations in such establishments and correlative sexually transmitted diseases; the well-being of the Village's retail trade and residential neighborhoods; and crime and property values. Clearly, Ordinance 2–96 is aimed

(2) public or private educational facility including but not limited to child day care facilities, nursery schools, preschools, kindergartens, elementary schools, private schools, intermediate schools, junior high schools, middle schools, high schools, vocational schools, secondary schools, continuation schools, special education school, junior colleges, and universities; school includes the school ground, but does not include the facilities used primarily for another purpose and only incidentally as a school;

(3) a public park or recreational area which has been designated for park or recreational activities including but not limited to a park, playground, nature trails, swimming pool, reservoir, athletic field, basketball or tennis courts, pedestrian/bicycle paths, wilderness areas, or other similar public land within the village which is under the control, operation, or management of the village park and recreation authorities;

(4) the property line of a lot zoned for residential use and devoted to a residential use as defined in the zoning code; or

(5) an entertainment business which is oriented primarily towards children or family entertainment.

at preventing the negative secondary effects of adult book stores, rather than the content of such books. The 1996 regulations, therefore, must be analyzed as a content-neutral time, place and manner regulation.

As a content-neutral regulation, Ordinance 2–96 must satisfy a two-prong test. First, it must serve a substantial government interest. *See id.* at 50, 106 S.Ct. 925. The ordinance's preamble establishes that 2–96, by its terms, is designed to prevent crime and health hazards and to ensure the welfare of local businesses, neighborhoods, property values and the quality of urban life. These considerations are nearly identical to those identified in *Renton* as serving the "substantial governmental interest" of responding to the "admittedly serious problems created by adult theaters." *Id.* at 48–50, 54, 106 S.Ct. 925. Plaintiff offers no evidence to rebut the substantial evidence that Ordinance 2–96 was enacted to combat the secondary effects of sexually-oriented businesses.

Second, Ordinance 2–96 must allow for reasonable alternative avenues of communication. *See id.* at 50, 106 S.Ct. 925. The *Renton* Court found that the Renton ordinance, which left "more than five percent of the entire land area of Renton open to use as adult theater sites," *id.* at 53, 106 S.Ct. 925, did allow for reasonable alternative avenues of communication. Here, the Village of Brice's 1996 ordinance's 750 foot radius leaves 27% of the commercial property available for the adult book trade. Alternate avenues of communications are available for adult book sellers.

The Village of Brice's Ordinance 2–96, is a content-neutral zoning regulation which serves a substantial governmental interest and allows alternative avenues of communication for adult entertainment establishments. It is, therefore, a constitutionally valid regulation.

## B. Plaintiff's contemplated use of the property was not grandfathered in under Ohio law.

■ Plaintiff argues in his Motion for Summary Judgment[3] that, pursuant to Ohio Rev.Code § 713.15, his use of his property for an adult book establishment should be grandfathered into the current Village zoning plan because he "was never afforded an opportunity to continue to operate" under the unconstitutional 1994 Ordinance. Because Plaintiff's contemplated use was deemed a nuisance, however, and thus not "lawful," his use of the property for adult entertainment purposes could not have been grandfathered into the Village's zoning under § 713.15.

Ohio Rev.Code § 713.15 provides:

The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance, any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code.

In sum, this statute permits the continuation of existing and lawful uses of property at the time of a zoning change unless the nonconforming use is voluntarily discontinued for two years or more.

Section 713.15 addresses two separate and distinct issues: (1) the existence of a lawful use at the time a change in zoning occurs, and (2) discontinuation of a nonconforming use which occurs after a change in zoning. Only the first issue is relevant to this case, as the change in Village zoning did not occur until 1996—well after Plain-

---

**3.** Plaintiff does not advance this theory in his original or amended Complaints. This argu-

ment appears only in Plaintiff's summary judgment pleadings.

tiff discontinued his use. To evaluate this issue, two questions must be answered; first, whether the nonconforming use *was in existence* at the time of the zoning change; and second, whether the use *was lawful* at that time.

There is no dispute that Plaintiff's property was not in use as an adult entertainment facility at the time of the enactment of the 1996 ordinance. Plaintiff argues, however, that the 1994 Ordinance unconstitutionally barred the store's operations. Defendant maintains that Plaintiff's business discontinued, and never reopened, after the state court padlocked it for a year in 1991. Defendant argues that there is no evidence that Plaintiff applied for a permit or in any way opened shop in 1995. Plaintiff responds in his affidavit that his store "ceased doing business" in January 1995 as a result of learning of the 1994 ordinance.

At first glance this disagreement appears to create an issue of fact, that is, whether Plaintiff's business would have been in existence at the time of the enactment of the 1996 ordinance but for the barring effect of the 1994 ordinance. Plaintiff, however, has produced but "scintilla" of evidence in support of his factual contention, through his Complaint and affidavit, that his tenants ceased doing business in January of 1995 because a Brice police officer visited the premises and told an employee of Plaintiff's tenant that his operation violated the law. Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

This Court need not, however, rest its decision on Plaintiff's lack of evidence with regard to whether his property was used as an adult entertainment facility in 1995, and whether it was shut down by the Brice police under the 1994 ordinance, because there is no genuine dispute of material fact about whether the existing or contemplated use was going to be lawful. Plaintiff does not dispute that his contemplated or existing non-conforming use was a nuisance at the time of the enactment of the 1996 Ordinance, and therefore not entitled to protection under the grandfathering statute.

The very issue before this Court was addressed by an Ohio Court, with regard to this same Plaintiff. In *Booghier v. Wolfe*, 67 Ohio App.3d 467, 587 N.E.2d 375 (1990), the Clark County Court of Appeals considered a similar case brought by Plaintiff Mark Wolfe. In *Booghier*, a county zoning inspector sought to enjoin Plaintiff's use of his property for adult entertainment. Plaintiff had bought the property in July of 1986, shortly after the state padlocked the premises as a nuisance; apparently, there had been incidents of prostitution at the nude-dancing establishment. After purchasing the property, Plaintiff intended to retain its adult entertainment use, and granted a lease option to a prospective tenant. In May of 1987, however, before Plaintiff's tenant could open the business, the county's zoning changed, forbidding such facilities.

In response to Plaintiff's argument that the adult entertainment use was grandfathered into the 1987 zoning plan, the *Booghier* Court found that there was no existing, lawful, nonconforming use at the time of the enactment of the zoning change. First, the non-conforming use was not in existence at the time the 1987 ordinance passed. Even though Plaintiff had contemplated the adult entertainment use and expended money in preliminary work to that end, the business had not yet opened, and, therefore, his rights had not vested. *Id.* at 477–78, 587 N.E.2d 375. Second, because the use of the property as an adult entertainment business had been enjoined and shut down for a year as a nuisance, the Court of Appeals held that the trial court could have reasonably inferred that the contemplated use as of the change in zoning "could not or would not be carried on absent the type of activities that had previously resulted in the declaration that

the premises were a nuisance." *Id.* at 472, 587 N.E.2d 375.

As the *Booghier* Court noted, the law of Ohio clearly specifies that property uses which constitute public nuisances are not afforded protection under the Ohio grandfathering statute. *See Akron v. Chapman,* 160 Ohio St. 382, 116 N.E.2d 697 (1953); *Matthews v. Pernell,* 64 Ohio App.3d 707, 582 N.E.2d 1075 (1990). Indeed, Ohio courts have consistently maintained that:

> uses which are unlawful or which constitute a public nuisance do not enjoy an exemption under [the grandfathering statute] and are subject to a properly adopted zoning code even though the use preceded the adoption of the code.... They are not entitled to nonconforming use protection because the law will not protect an illegal act. The due process considerations which ordinarily prohibit retroactive regulation do not apply in that event.

*Matthews,* 64 Ohio App.3d at 712, 582 N.E.2d 1075, *citing Akron,* 160 Ohio St. 382, 116 N.E.2d 697. The *Matthews* Court noted that, much like this case, "no showing was made that the current [adult entertainment] business ... was substantially or significantly different from that found to be a public nuisance." 64 Ohio App.3d at 713, 582 N.E.2d 1075.

While neither zoning nor building ordinances may be enforced against preexisting, otherwise lawful, non-conforming structures absent a declaration of nuisance, *see Akron v. Chapman,* 160 Ohio St. at syllabus ¶ 2, in considering whether a valid nonconforming use exists, a prior "determination of illegality is binding on appellants and their business activity in any substantially similar form." *Interstate Independent Corp. v. Bd. of Zoning Appeals for Fayette County,* 123 Ohio App.3d 511, 704 N.E.2d 611 (1997). While Plaintiff's wife (rather than Plaintiff himself) was the owner of the premises at the time of the nuisance declaration in 1991, Plaintiff was not the owner at that time of the nuisance declaration in *Booghier.* Connecting the nuisance declaration to Plain-

tiff in *this* case is even more logical than in *Booghier;* there the court held that a ruling of unlawfulness was properly applied to the new owner when the transfer of ownership involved two independent parties, whereas here, it was between husband and wife. Most importantly, in neither case did Plaintiff make the essential showing that the contemplated business activity was substantially different than that which had been declared a nuisance.

Thus, while there may be an issue of fact about whether Plaintiff's tenant's business was or would have been in existence but for the unconstitutional 1994 Ordinance, the dispute is not material because, according to Ohio's grandfathering statute and precedent interpreting that statute, Plaintiff's contemplated or existing nonconforming use was not lawful at the time of the enactment of the 1996 Ordinance, and therefore not entitled to protection.

For the foregoing reasons, Defendant's Motion for Summary Judgment with regard to the 1996 ordinance is **GRANTED;** Plaintiff's Motion for Summary Judgment, as well as Plaintiff's Motion for Reconsideration are **DENIED.** This case will proceed to trial solely on the issue of damages with regard to the 1994 ordinance.

**IT IS SO ORDERED.**