**Patricia CLARK, Plaintiff**

v.

**WHIRLPOOL CORPORATION,**
**Defendant**

**No. 3:02CV7141.**

United States District Court,
N.D. Ohio,
Western Division.

March 18, 2003.

Francis J. Landry, Wasserman, Bryan, Landry & Honold, Toledo, OH, for Patricia Clark, Plaintiff.

Amanda Wright, Littler Mendelson, Chicago, IL, Daria A. Carr, Anspach, Serraino, Meeks & Nunn, Toledo, OH, Frederick L. Schwartz, Littler Mendelson, Garrison L. Phillips, Littler Mendelson, Chicago, IL, for Whirlpool Corporation, Defendant.

## ORDER

CARR, District Judge.

Plaintiff Patricia Clark brings this action against defendant Whirlpool Corporation ("Whirlpool") claiming disability discrimination, harassment, and retaliation in violation of Ohio Revised Code § 4112.01 *et seq.* This court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion shall be granted.

### BACKGROUND

Plaintiff began working at defendant's Findlay, Ohio, plant in 1972. Her last job involved running consoles in the plastics department. Plaintiff would take unfinished consoles off of a press to inspect, trim, and decorate them. She would then stack the consoles onto a tote. Once the tote was full of consoles, plaintiff would push the tote into an aisle to be picked up by a tow motor.

On March 14, 1996, plaintiff was hit by the tow motor. As a result of the accident, plaintiff claims she suffered injuries to her back, left knee, right arm, and right foot. Also, the accident "significantly aggravated preexisting neck injuries and back and hip injuries resulting from a previous occupational injury." Pl.'s Complt. at ¶ 6.

After the accident, plaintiff applied for and received workers compensation benefits but only for a broken toe, right foot sprain, left knee contusion/sprain, and left foot sprain.[1] Plaintiff was on medical leave for one month.

---

1. Whirlpool is a self-insured employer which uses a third-party administrator for purposes of reviewing and making decisions regarding

On April 15, 1996, plaintiff returned to work. Even though plaintiff's doctor returned her to work without restrictions, plaintiff claims that when she returned to work, she suffered from "the disabling conditions of injured foot, and neck, back and hip conditions." *Id.* at ¶ 7. When she returned, the only accommodation plaintiff requested was use of a conveyor, which Whirlpool provided.

On April 26, 1996, a Whirlpool doctor examined plaintiff, and, as a result, placed restrictions on plaintiff's ability to work for three weeks. Plaintiff was allowed to work eight hour days, but any lifting, pushing, and pulling was restricted to twenty pounds and bending was restricted to four to eight times per hour. The Whirlpool doctor also recommended a sitting job only and frequent stretch breaks. Plaintiff, however, does not recall seeing Whirlpool's doctor or having these restrictions placed on her. Apparently, the restrictions were not followed.

From April, 1998, to June, 1998, plaintiff took leave to care for her mother. From December, 1998, to January 25, 1999, plaintiff took voluntary layoff. On both occasions, plaintiff returned to work without restrictions and without asking for accommodations.

Between February and August, 1999, plaintiff was on extended medical leave. Plaintiff's doctor diagnosed her with "cervical, thoracic and lumbar sprain/strain" and a herniated disc. Def.'s Ex. G, H; W000191, W000842, W000849, W001710. During this period, defendant provided payments to plaintiff pursuant to its sickness and accident policy. Under this policy, however, benefits were exhausted after six continuous months.

On August 23, 1999, plaintiff returned to work, resuming her prior position running consoles. Plaintiff's doctor did not place any restrictions on her, and she did not ask for an accommodation.

On September 27, 1999, plaintiff again went on extended medical leave. She received benefits under Whirlpool's sickness and accident policy until March, 2000.

In October, 1999, plaintiff underwent herniated disc surgery for the second time.[2] Plaintiff's doctor replaced a broken plate.

On February 21, 2000, plaintiff applied for disability retirement. Her application for retirement was approved on May 1, 2000.

In March, 2002, plaintiff filed this suit claiming defendant intentionally discriminated against her and harassed her on the basis of her disability. Plaintiff also alleged defendant retaliated against her after she reported her disability and insisted on treatment and proper accommodation.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who

---

its employees' workers compensation and disability claims.

**2.** Plaintiff first had a discectomy in March, 1995. Plaintiff's doctor testified that the first surgery was a success because plaintiff had good fusion and no spinal compromise.

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Disability Discrimination

Under Ohio law, it is unlawful "for an employer, because of the ... handicap, ... of any person, to discharge without just cause, to refuse to hire, or to otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112. 02(A).

■ To establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *City of Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 571, 697 N.E.2d 204 (1998) (citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281, 496 N.E.2d 478 (1986)).

### A. Whether Plaintiff is Handicapped

Under Ohio Revised Code § 4112.01(A)(13), "disability" means:

a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing; speaking, breathing, learning, and working; a record of. a physical or mental impairment; or being regarded as having a physical or mental impairment.

Chapter 4112 does not define "substantially limits." The Supreme Court of Ohio, however, has urged courts to look to the American with Disabilities Act, 42 U.S.C. § 12112, for guidance interpreting Ohio's prohibition on disability discrimination. *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998) ("The Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law.... We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

Under the Code of Federal of Regulations, "substantially limits a major life activity" means a person is "[u]nable to per-

form a particular major life activity that the average person in the general population can perform," or the person is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i), (ii).

The following factors are considered in determining whether an individual is substantially limited in a major life activity:

■ the nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.(j)(2)(i)-(iii).

■ In the Sixth Circuit, a physical condition or limitation is not considered a substantial impairment or handicap "unless it places an individual so far outside the norm as to make it impossible or unusually difficult for that individual to perform work that could be done by most other people." *Szalay v. Yellow. Freight Sys. Inc.,* 998 F.Supp. 799, 802 (N.D.Ohio 1996) (internal citations omitted). In *Penny v. United Parcel Serv.,* 128 F.3d 408 (6th Cir.1997), the court found a plaintiff was not disabled within the meaning of the ADA despite the fact he suffered from a permanent partial impairment, would have long-term difficulty running and walking, and could not lift consistently more than twenty-five pounds. *Id.* at 416.

■ Plaintiff claims she is disabled due to the condition of her back, neck, hips, both feet, and left knee. Plaintiff also claims she suffers from degenerative arthritis. According to plaintiff's complaint, these conditions significantly affect her major life activities of "working, lifting, walking, breathing, caring for herself, sleeping, sitting, bending driving, thinking and concentrating, interacting with others and performing manual tasks." Pl.'s Complt. at ¶ 7.

Besides plaintiff's deposition testimony, the only evidence offered to support plaintiff's claim of disability is from her treating neurosurgeon, Dr. C.T. Lin. Dr. Lin testified that plaintiff suffers from pain due to disc problems in her neck.

Dr. Lin, however, testified that he extended plaintiff's medical leave only because of plaintiff's assessment of her pain—not objective medical evidence.

Q: So she represented to you that the company was wanting her to go back to work?

A: Right

Q: And it was your assessment that she could try to do that?

A: Yeah. Why not?

Q: So when you're putting her out on disability for those spans of time it's more based on her beliefs of whether or not she can work at her current job?

A: Yes, of course.

Q: Did you know what her job was at Whirlpool during the time you were treating her?

A: No, I don't know.

Q: So you didn't know what sorts of activities her position required?

A: That's correct.

Lin Depo. at 48.

Besides plaintiff's report of pain, Dr. Lin could find no medical reason why plaintiff could not work. *Id.* at 50. He additionally could not say whether plaintiff's conditions substantially limited any major life activity. *Id.* at 53. In fact, he testified that plaintiff could work in some capacity:

Depending on the amount of the pain she has, like sedentary work, like clerk, receptionist, those kinds of things, she

could do that, but depending on the amount of pain she had in the neck or leg or back, she may not stand or sit down for many, many hours, for that kind of period.

*Id.* at 55.

Nevertheless, plaintiff argues that because of the pain in her neck and back she is substantially limited in the major life activities of bending, sitting for long periods of time, and sleeping. Plaintiff stated:

I have constant pain all the time, every day of my life, headaches so bad that I take at least 16 Ibuprofen a day. I'm on Vicodin for pain, I'm on Detrol because I cannot control my bladder and my bowel and I am on Ambien because I cannot sleep at night because my body hurts so bad.

Pl.'s Depo. at 93.

Other than plaintiff's self-serving and conclusory testimony of her disability,[3] there is no objective medical evidence to support her claim of disability. Thus, plaintiff's evidence is not sufficient to meet her prima facie burden showing that she is disabled.[4]

### B. Adverse Employment Action/Reasonable Accommodation

■■■ An adverse employment action is a "materially adverse change in the terms

and conditions of ... employment." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir.1999). As the court explained in *Peterson v. Buckeye Steel Casings,* 133 Ohio App.3d 715, 727, 729 N.E.2d 813 (1999):

The adverse action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment.... Factors to consider when determining whether an employment action was materially adverse include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.' ... Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action.

(citations omitted).

■■■ Plaintiff claims she suffered an adverse employment action when she was "forced" to go on medical leave and disability retirement by Whirlpool's failure to accommodate her disability.[5] Plaintiff fur-

---

**3.** Several courts have declared that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001) (citation omitted); *see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Syvongxay v. Henderson,* 147 F.Supp.2d 854, 859 (N.D.Ohio 2001); *Wolfe v. Village of Brice,* 37 F.Supp.2d 1021, 1026 (S.D.Ohio 1999) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986); *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995)).

**4.** Plaintiff additionally argues that she was "regarded as" disabled because defendant was aware of her medical problems going back to 1977. Regardless of whether plaintiff has created an issue of material fact that she meets the statutory definition of "disabled," however, she fails to meet the other two elements of her prima facie case. Therefore, I need not address this argument.

**5.** In her complaint, plaintiff argued that defendant "refused to recognize and treat any conditions other than Plaintiff's foot despite

ther alleges that she was "forced" back to work without restrictions because of defendant's unwritten policy that injured workers will lose their jobs if they attempt to return to work with restrictions. According to plaintiff, because of this unwritten policy, she asked Dr. Lin to return her to work without restrictions even though she was still in pain. Plaintiff also appears to argue that this unwritten policy prevented her from asking for other reasonable accommodations, such as slowing down the presses on the console line, a "light duty" position, or for a position on the Kitchen-Aid line that she could perform without pain.[6]

■ Plaintiff is correct that defendant has a duty to reasonably accommodate plaintiff's disability. O.A.C. § 4112–5–08(E)(1) ("An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business."); 42 U.S.C. § 12112(a)(5)(A) ("The term 'discriminate' includes … not making reason-

able accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability …. ").[7]

■ When a plaintiff employee claims that she would have been capable of performing her job if she had been accommodated, she has the initial burden of having proposed an accommodation and showing that the accommodation is objectively reasonable. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir.1996); *see also, Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 997 (D.Or.1994) (noting that an employee cannot "expect the employer to read his mind and know he secretly wanted a particular accommodation"). Where a plaintiff seeks accommodation, "she must establish that a 'reasonable accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation." *Monette*, 90 F.3d at 1186 n. 12.

The record here shows that Whirlpool granted the only accommodation requested by plaintiff—providing her with a conveyor to assist her work. Pl.'s Depo. at 49.

---

her complaints and harassed her by contesting her workers compensation filings despite its knowledge of the true extent of her problems." Pl.'s Complt. at ¶ 8. Plaintiff has not responded to defendant's argument in its motion for summary judgment that the denial of workers compensation benefits is insufficient to constitute an adverse employment action. Thus, plaintiff is deemed to have abandoned this claim.

6. Plaintiff also states:
The fact that Defendant never gave Plaintiff an evaluation, waited 10 months before allowing Plaintiff the "walk through," and thereafter placed an inappropriate burden upon the Plaintiff to identify jobs she is "capable of performing" without allowing her an opportunity to see if she can perform such jobs, does not excuse the Defendant from its obligation to participate in the interactive process in providing a reasonable accommodation for Plaintiff's disability. See *Taylor* at 165.

Pl.'s Br. at 13–14.
In making this argument, plaintiff has not cited to the record or identified the source this information.

7. Defendant's duty to reasonably accommodate plaintiff is typically not argued as an "adverse employment action." Disability discrimination can include both an employer's taking an adverse employment action based on an employee's disability or an employer's failure to make a reasonable accommodation. *See e.g., Roush v. Weastec Inc.*, 96 F.3d 840, 843 (6th Cir.1996) ("To prevail on her ADA claim, therefore, Roush must prove that (1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability.").

Nevertheless, plaintiff seems to argue that there were other jobs she was capable of performing at Whirlpool.

▉▉▉▉▉ Transfer or reassignment of an employee is within the realm of possible reasonable accommodation. In *Burns v. Coca–Cola Enters., Inc.*, 222 F.3d 247, 258–59 (6th Cir.2000), the Sixth Circuit held that a plaintiff must establish that she requested and was denied reassignment to a position for which she was otherwise qualified. Alternatively, a plaintiff may show that she requested and was denied assistance in identifying jobs for which she was otherwise qualified.

In this case, plaintiff failed to offer proof that she requested a reassignment or that there were currently available positions for which she was qualified.

As to plaintiff's argument about defendant's "unwritten" policy, plaintiff has presented no evidence, beyond her bare allegations and subjective belief, that such a policy existed. Such self-serving assertions are not sufficient to create a question of fact.

Thus, plaintiff has not met her burden in establishing a failure to accommodate.[8]

### C. Essential Functions of the Job

▉▉▉ The third element of a handicap discrimination case in Ohio is "that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *City of Columbus Civ. Serv. Comm'n,* 82 Ohio St.3d at 571, 697 N.E.2d 204. This has been interpreted as requiring the plaintiff to show she can "safely and substantially perform the essential functions of the job *with or without a reasonable accommodation." Shaver v. Wolske & Blue,* 138 Ohio App.3d 653, 663, 742 N.E.2d 164 (2000) (emphasis added).

Plaintiff testified that she is not able to perform the essential functions of her job. In her deposition, she stated:

Q: You contend that you are unable to work in any form at this time?

A: If I don't have any sleep and I can't control my bladder or my bowel am I supposed to wear pull-ups to work and not go with any sleep? I don't think so.

Q: For clarity of record you are unable to work.

A: Right.

Q: There are no jobs which you feel you can perform. You have to answer verbally.

A: No.

Pl.'s Depo. at 111.

Plaintiff further testified that in 1998, 1999, and 2000, when plaintiff took family medical leave, voluntary layoff, and extended medical leaves, she was taking time off because she "hurt so bad [she] couldn't work." *Id.* at 59. The record also shows that plaintiff claimed she was "disabled and unable to work" in September, 1999. In February, 2000, plaintiff applied for and received disability retirement. She also

---

8. It should be noted that in *Shaver v. Wolske & Blue,* 138 Ohio App.3d 653, 668, 742 N.E.2d 164 (2000), the court stated: "Federal courts, relying on the Equal Employment Opportunity Commission ("EEOC") compliance manual, have recognized that third-parties, such as family members, friends or health professionals, may request an accommodation on the employee's behalf." (citations omitted). Here, there is evidence that a Whirlpool doctor—even though plaintiff does not recall seeing this doctor or having these restrictions placed on her—concluded that after plaintiff's March, 1996, tow motor accident, she should only work under certain restrictions. As noted above, these restrictions were to end on May 10, 1996. Plaintiff returned to work on April 15, 1996, under her own doctor's orders of no restrictions. Thus, plaintiff never worked under restrictions. Nonetheless, because plaintiff never requested accommodation thereafter, defendant cannot be found to have failed to accommodate her.

applied for workers compensation benefits, although her claim was eventually denied.

This evidence demonstrates that plaintiff has not met her burden in proving she could "safely and substantially perform the essential functions of the job in question." Even if she could have performed a job with reasonable accommodation, as explained above, she did not request an accommodation and it was her duty to do so. Plaintiff therefore has not met her burden of proposing an accommodation, especially when it must be assumed that she would need an accommodation to perform the essential functions of any job.

Because plaintiff has failed to make a prima facie case, defendant's motion for summary judgment on plaintiff's disability discrimination claim is granted.

## II. Harassment

The Sixth Circuit has recognized hostile work environment claims based on alleged workplace harassment because of disability. *See Keever v. Middletown*, 145 F.3d 809 (6th Cir.1998). The standard for an ADA hostile work environment claim tracks that used for hostile work environment sexual harassment claims. *Coulson v. Goodyear Tire & Rubber Co.*, 31 Fed. Appx. 851, 858 (6th Cir.2002) (citing *McClain v. Southwest Steel Co.*, 940 F.Supp. 295 (N.D.Okla.1996). Harassment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In this case, plaintiff admits that no one at Whirlpool made negative comments to her with respect to her disability. Pl.'s Depo. at 144. Instead, plaintiff argues that Whirlpool "harassed her by contesting her workers compensation filings despite its knowledge of the true extent of her problems." Pl.'s Complt. at ¶ 8. Plaintiff further alleges that defendant "stepped up its campaign of harassment" when it "refused to accommodate her in any way, and would only let her return to work to full duty." *Id.*

As defendant argues, because Whirlpool is a self-insured employer, it must have the right to approve or deny its employees' workers compensation claims based on the medical information before it. More importantly, however, plaintiff has not provided any evidence that Whirlpool's response to plaintiff's workers compensation claim was different than its response to any other employee's claims or that Whirlpool responded in a harassing or discriminatory manner. Similarly, as explained in the discrimination section of this opinion, plaintiff's claim that defendant harassed her because it failed to accommodate her is not demonstrated by the record. Plaintiff admitted that the only accommodation she requested was granted.

Defendant's motion for summary judgment for plaintiff's harassment claim is therefore granted.

## III. Retaliation

Ohio Revised Code § 4112.02(I) states that it shall be an unlawful discriminatory practice:

For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

To establish a prima facie case of unlawful retaliation, a plaintiff must es-

tablish "(1) that he engaged in a protected activity; (2) that he was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action." *Thatcher v. Goodwill Inds. of Akron,* 117 Ohio App.3d 525, 534–35, 690 N.E.2d 1320 (1997) (citing *Chandler v. Empire Chem., Inc. Midwest Rubber Custom Mixing Div.,* 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (1994)). Absent other direct or compelling circumstantial evidence, temporal proximity alone is insufficient to support a finding of a causal connection. *Pflanz v. City of Cincinnati,* 149 Ohio App.3d 743, 763, 778 N.E.2d 1073 (2002) (citations omitted).

 The protected activity plaintiff claims she engaged in is "raising disability issues and requesting treatment and accommodation as to the injuries suffered in March, 1996." Pl.'s Br. at 14. As a result of reporting her disability, plaintiff claims defendant "engaged in a campaign of harassment" by failing to properly treat and accommodate her disability and never including her "injured back, neck and hips in her Worker's Compensation claim." Pl.'s Complt. at ¶ 13; Pl.'s Br. at 15.

Plaintiff has not explained how "raising disability issues" and "requesting treatment and accommodation" are statutorily protected activities. Regardless, plaintiff has presented no evidence that failing to include plaintiff's alleged neck and back injuries on her workers compensation claim could be classified as an adverse employment action or that defendant engaged in any kind of harassment campaign. In fact, the record demonstrates that Whirlpool granted every medical leave and accommodation plaintiff asked for, and when plaintiff could not work anymore, she *voluntarily* filed for disability retirement. Additionally, as explained above, plaintiff cannot argue the adverse employment action was Whirlpool's failure to accommodate her disability.

Finally, plaintiff has failed to offer any evidence of a causal relationship between her report of a disability and an adverse employment action.

Thus, defendant's motion for summary judgment is granted as to this claim.

## CONCLUSION

It is, therefore,

**Ordered that**

Defendant's motion for summary judgment be, and hereby is, granted.

**So ordered.**