SHAVER, Appellant and Cross-Appellee,

v.

WOLSKE & BLUE et al., Appellees and Cross–Appellants.

[Cite as *Shaver v. Wolske & Blue* (2000), 138 Ohio App.3d 653.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–331.

Decided July 13, 2000.

654

John S. Marshall, for appellant.

Bricker & Eckler LLP, Donald R. Keller and Richard S. Lovering, for appellees.

KENNEDY, Judge.

Appellant, David L. Shaver, appeals from a decision of the Franklin County Court of Common Pleas granting the summary judgment motion of appellees, Wolske & Blue, Walter J. "Cy" Wolske, and Jason A. Blue. Appellees also filed a cross-appeal from the trial court's decision granting appellant's motion to dismiss their counterclaim, denying leave for appellees to amend their counterclaim, and overruling appellees' motion for stay.

Appellant filed a complaint on January 23, 1997, asserting causes of action for handicap discrimination, failure to make a reasonable accommodation, and the tort of wrongful discharge in violation of public policy arising from appellees' discharge of appellant. On July 30, 1998, appellees filed a counterclaim asserting fraud and frivolous litigation in violation of R.C. 2323.51, as well as a tort claim for violating the public policy underlying R.C. 2323.51. Appellees filed an amended counterclaim, and appellant filed motions to dismiss the counterclaim and the amended counterclaim. On August 27, 1998, appellees filed a motion to file an amended counterclaim instanter and a motion to stay consideration of appellant's motion to dismiss. Appellees filed a summary judgment motion on November 20, 1998.

The trial court issued a decision on December 7, 1998, granting appellant's motion to dismiss appellees' counterclaims and denying appellees' motion to stay and motion to amend their counterclaim. The trial court found that appellees' fraud claim failed because it was not pled with particularity as required by Civ.R. 9(B), and because their theory of recovery was unsupportable in law in that appellant was under no duty to inform appellees if he was seeking other employment. The trial court dismissed appellees' causes of action under R.C. 2323.51 for frivolous conduct, finding that they were premature. The trial court denied the motion to stay for additional discovery because it was moot given that their fraud claim was improper. Finally, the trial court denied the motion to amend the counterclaim to assert a cause of action for abuse of process because the facts that appellees alleged did not state a cause of action for abuse of process.

On March 1, 1999, the trial court issued a decision granting appellees' motion for summary judgment. The trial court found that appellant failed to demonstrate the existence of a prima facie case of handicap discrimination because he failed to show that he was capable of performing his job, he failed to show that appellees terminated him due to his handicap, and he failed to show that he was handicapped. Additionally, the trial court granted summary judgment for appellees on appellant's claim for failure to accommodate because appellant did not propose a specific accommodation or demonstrate that such an accommodation

was reasonable. The trial court filed a judgment entry incorporating its decision on March 17, 1999. Appellant filed a timely notice of appeal, and appellees filed a timely notice of cross-appeal.

On appeal, appellant asserts four assignments of error:

### Assignment of Error No. 1

"The trial court erred in determining there were no genuine issues of material fact about whether an individual diagnosed and documented to suffer from major depression in a way that severely impaired his ability to work and engage in other major life activities, and who was so regarded by his employer, did not have a disability protected by R.C. Ch. 4112."

### Assignment of Error No. 2

"The trial court erred in determining that there were no genuine issues of material fact about whether an employee whose covered disability forced his temporary absence from work and dictated a modified workload was capable, with reasonable accommodation readily available from the employer, of substantially performing the essential functions of his job."

### Assignment of Error No. 3

"The trial court erred in determining that there were no genuine issues of material fact about whether an employee whose covered disability temporarily deprived him of the ability to communicate effectively with his employer satisfied in other ways a duty to pursue a readily available reasonable accommodation."

### Assignment of Error No. 4

"The trial court erred in determining that there were no genuine issues of material fact about whether an employee whose covered disability forced his temporary absence from work and dictated a modified workload was discharged because of his disability when his employer declined to provide a readily available reasonable accommodation."

In their cross-appeal, appellees also assert four assignments of error:

"A. The trial court erred pursuant to Ohio R.Civ.P.12(B)(6) in sustaining plaintiff's motion to dismiss defendants' counterclaim for fraud because defendants' counterclaim stated a claim upon which relief can be granted.

"B. The trial court erred pursuant to Ohio R.Civ.P.12(B)(6) in sustaining plaintiff's motion to dismiss defendants' counterclaim for frivolous litigation in violation of R.C. § 2323.51 because defendants' counterclaim stated a claim upon which relief can be granted.

"C. The trial court erred pursuant to Ohio R.Civ.P.15(A) in overruling defendants' motion for leave to amend the counterclaim to assert an abuse of process cause of action which was substantively identical to the abuse of process claim determined to state a claim upon which relief could be granted in *Blank v. Securx, Inc.,* [(1997), 123 Ohio App.3d 248, 704 N.E.2d 21] (Ohio App.8th Dist.1997).

"D. The trial court erred in overruling defendants' motion for stay pursuant to Ohio R.Civ.P.56(F) and *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121 [4 OBR 367, 447 N.E.2d 100]."

Appellant was employed by appellees as an attorney beginning in January 1988. Appellant worked almost exclusively with Blue. Appellant's work consisted primarily of conducting depositions, other discovery, and medical research in medical malpractice cases. After appellant finished the discovery and research, Blue would attempt to settle the case. If a settlement was not reached, Blue would try the case, sometimes with the assistance of appellant. Blue indicated that appellant was not comfortable as a trial lawyer but that appellant did a "very good job at what his job was."

In November and December 1991, appellant suffered from an episode of depression. He was treated at Harding Hospital, a psychiatric hospital, as an outpatient, and was prescribed anti-depressant medication. Appellees provided appellant with three weeks of leave during this period. According to appellant and his wife, they informed appellees of appellant's condition in 1991. Appellant's secretary, Melody DePalma, indicated that it was common knowledge in the firm that appellant suffered from depression, that he was on anti-depressants, and that he was off work in 1991 due to his condition.

In 1993, appellant again sought the help of mental health professionals due to his depression. Dr. Joyce McCaughan Moore treated appellant in 1993, and she diagnosed him as suffering from "major depression recurrent." Dr. Moore explained that, unlike normal depression which most people experience from time to time, major depression is a serious medical disorder with both physical and psychological symptoms and is caused by the brain's inability to produce certain chemical neurotransmitters. Dr. Moore prescribed the anti-depressant drug Zoloft for appellant, and he attended seven psychotherapy sessions with Dr. Moore. Appellant quit taking Zoloft when his prescription ran out and after his last session in April 1994.

Beginning in late 1995 and early 1996, appellant again began experiencing symptoms of major depression. He suffered from insomnia, was lethargic, irritable, experienced anxiety, had difficulty concentrating, focusing his attention, remembering things, and making decisions. Appellant indicated that he was not performing as well as he should at work during this period and that he was

withdrawn from his wife, children and friends. On Tuesday, May 21, 1996, Wolske called appellant into a meeting in Blue's office during which he complained about expenses that appellant was incurring in cases. Wolske berated appellant and was very abusive, and Blue accused appellant of causing the firm to lose a case. After the meeting, appellant did not feel that his job was in jeopardy, and Blue told appellant that he did not want appellant to leave the firm. Appellant was very withdrawn after the meeting and did not communicate with his family that night, but he was able to attend a deposition in Cincinnati and a pretrial in Portsmouth on the following day.

On Thursday morning, May 23, 1996, appellant awoke in a severely depressed state and was unable to go to work. Appellant's wife, Pat Shaver, took him to Harding Hospital, where he was assessed and prescribed Zoloft and Trazodone. Pat called appellant's secretary and informed her that appellant was suffering from another depressive episode and would need some time off work to rest. Pat also spoke to Blue on Friday, May 24, 1996, to inform him of appellant's situation and that they had been to Harding. Blue told her that appellant should take all the time he needed to get well. Appellant returned to Harding on Sunday, May 26, 1996, and his medications were adjusted.

Dr. Moore saw appellant on May 29, 1996, and she described his state as extremely distraught. He was quite depressed, had lost weight, was prone to uncontrollable weeping, could not think, was in a fog, was withdrawn, had a fear of being left alone, and was very fragile. Dr. Moore diagnosed appellant as suffering from a severe recurrence of major depression. Although appellant wanted to go back to work, she advised him that he would be better off mentally if he looked for another position or started his own practice.

Appellant was not able to call the firm personally until Thursday, May 30, 1996, but Blue's secretary informed appellant that Blue would not speak to him unless Wolske was also on the phone. Although they set up a time for appellant to call on Friday, May 31, 1996, appellant was told that they were not available when he called back. Pat called Wolske at home on Sunday, June 2, 1996, and informed him of appellant's status. Wolske told her that appellant needed to take the time he needed to get well, but he would not discuss the status of appellant's employment. Pat informed Wolske that appellant was unable to participate in the conference call rescheduled for Monday, June 3, 1996, because he was not feeling well enough to talk with them, but Wolske told her that the conference call had been a misunderstanding.

Appellant called later in the week to report that he planned to come to work on Monday, June 10, 1996, to check on his cases. Appellant wanted to make sure that Blue and Wolske would be there. Blue's secretary called appellant back to inform him that appellees did not want him at the firm during business hours and

arranged for a meeting at 6:00 p.m. instead. In his deposition, Doug Wolske, the firm's office manager, indicated that the purpose of the June 10, 1996 meeting was to terminate appellant. During the same week, appellant consulted with an employment law attorney because he considered appellees' refusal to talk to him odd. Appellant's wife called appellees on Monday, June 10, 1996, to report that appellant did not feel well enough to meet with them and would be in another day. Later that day, she called back to say appellant could meet at 6:00 p.m., but she was told that Wolske and Blue were no longer able to meet with him. On Tuesday, June 11, 1996, appellees delivered to appellant's home the personal items from his office and a letter terminating his employment.

Appellant continued in Dr. Moore's care, and she released him to return to work in July 1996. Although appellant sought other positions, he was unable to find another job. Subsequently, appellant started his own practice and, eventually, formed a partnership with two other attorneys.

We address appellant's four assignments of error together. Essentially, appellant argues that the trial court erred by granting appellees' summary judgment motion in that genuine issues of material fact exist as to whether appellant demonstrated a prima facie case of handicap discrimination based on appellees' failure to reasonably accommodate his disability. We agree.

An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. An appellate court applies the same standard as the trial court in reviewing a trial court's disposition of a summary judgment motion. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. Before summary judgment can be granted under Civ.R. 56(C), the trial court must determine that "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379 citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

The trial court found that appellant failed to demonstrate a prima facie case of employment discrimination. The trial court indicated that appellant did not show that he was capable of performing his job, even with a reasonable accommodation,

and that appellant did not specifically propose an accommodation or that such an accommodation was reasonable. Additionally, the trial court found that appellant failed to show that he was handicapped, or regarded as handicapped, under R.C. 4112.01.

The Supreme Court of Ohio has held that Ohio courts may look to cases and regulations interpreting the federal Americans with Disabilities Act ("ADA") in interpreting the Ohio anti-discrimination statutes. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204, 206–207. To establish a prima facie case of handicap discrimination under R.C. 4112.02, a plaintiff must show (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, due to the plaintiff's handicap, and (3) that the plaintiff can safely and substantially perform the essential functions of the job with or without a reasonable accommodation. *Id.* at 571, 697 N.E.2d at 205–206. The prima facie case under the ADA is virtually identical. *Taylor v. Phoenixville School Dist.* (C.A.3, 1999), 184 F.3d 296, 306. Both are based on the burden-shifting analysis delineated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

However, disability discrimination under the ADA can include both an employer's taking an adverse employment action based on an employee's disability and an employer's failure to make a reasonable accommodation. *Taylor,* 184 F.3d at 306; *Monette v. Electronic Data Sys. Corp.* (C.A.6, 1996), 90 F.3d 1173, 1183; *Pfost v. Ohio State Atty. Gen.* (Apr. 20, 1999), Franklin App. No. 98AP–690, unreported, 1999 WL 236182. Ohio law also places a duty on employers to make reasonable accommodations of employees with disabilities:

"An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." Ohio Adm.Code 4112–5–08(E)(1).

This court has recognized the employer's duty to accommodate an employee's disability as provided in Ohio Adm.Code 4112–5–08(E)(1). *Martinez v. Ohio Dept. of Adm. Serv.* (1997), 118 Ohio App.3d 687, 695, 693 N.E.2d 1152, 1156–1157; *Ohio State Univ., College of Social & Behavioral Sciences v. Ohio Civ. Rights Comm.* (Nov. 9, 1989), Franklin App. No. 88AP–1072, unreported, 1989 WL 135298. The *McDonnell Douglas* prima facie case and burden-shifting analysis does not apply in a failure-to-accommodate case. *Bultemeyer v. Fort Wayne Community Schools* (C.A.7, 1996), 100 F.3d 1281, 1283–1284. Instead, a plaintiff must demonstrate (1) that he or she was disabled, (2) that the employer was aware of the disability, and (3) that he or she was an otherwise qualified

individual with a disability in that he or she satisfied the prerequisites for the position and could perform the essential functions of the job with or without reasonable accommodation. *Id.* at 1284.

Federal courts have recognized that the duty of an employer to make a reasonable accommodation also mandates that the employer interact with an employee in a good faith effort to seek a reasonable accommodation. *Taylor* at 311–312 (Third Circuit, finding that both parties have a duty to assist in the search for a reasonable accommodation and to act in good faith); *Taylor v. Principal Financial Group, Inc.* (C.A.5, 1996), 93 F.3d 155, 165 (Fifth Circuit, stating that an employee's request for an accommodation triggers an employer's obligation to participate in the interactive process), certiorari denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515; *Bultemeyer* at 1285 (Seventh Circuit, holding that an employee's request for a reasonable accommodation requires communication between the parties and that both parties bear the responsibility for determining what accommodation is necessary); *Fjellestad v. Pizza Hut of Am., Inc.* (C.A.8, 1999), 188 F.3d 944, 951–952 (Eighth Circuit, rejecting employer liability based solely on not engaging in the interactive process but requiring that the employer must do so when a disabled employee requests an accommodation). But, see, *White v. York Internat. Corp.* (C.A.10, 1995), 45 F.3d 357, 363 (Tenth Circuit, noting that the employer does not have to engage in the interactive process unless the employee shows that a reasonable accommodation is available); *Willis v. Conopco, Inc.* (C.A.11, 1997), 108 F.3d 282, 285 (Eleventh Circuit, holding that a plaintiff must show that reasonable accommodations were available and that an employer cannot be held liable merely for not engaging in the interactive process). In *Pfost,* this court followed the Fifth Circuit's holding in *Principal* and recognized that an employee's request for an accommodation triggers an employer's obligation to participate in the interactive process of seeking an accommodation. The Third Circuit in *Taylor* further refined what a plaintiff must demonstrate to show that an employer failed to make a reasonable accommodation by failing to participate in an interactive process of reaching a reasonable accommodation:

"To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor* at 319–320.

The *Taylor* court indicated that, where there is a genuine issue of material fact that the employer did not act in good faith in assisting the employee in seeking an

accommodation, summary judgment cannot be granted on the issue that a reasonable accommodation was not possible because the employer's bad faith precluded consideration of all possible reasonable accommodations. *Taylor* at 317–318.

Here, the trial court did not apply the proper analysis to appellant's failure to accommodate claim but, instead, merely found that appellant failed to request an accommodation and to show that it was reasonable. Thus, the trial court concluded that appellant did not demonstrate that he could safely and substantially perform the essential functions of the job with or without a reasonable accommodation. Given our independent standard of review on summary judgment, we must examine the evidence presented in a light most favorable to appellant under a failure-to-accommodate claim.

I.  A genuine issue of material fact exists as to whether appellant was handicapped.

A "handicap" under R.C. 4112.01(A)(13) is defined as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." The ADA defines "disability" with regard to an individual as:

"(A) [A] physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) [A] record of such an impairment; or

"(C) [B]eing regarded as having such an impairment." Section 12102(2), Title 42, U.S.Code.

The Code of Federal Regulations provides guidance for the meanings of the terms "substantially limits" and "major life activities" in Section 12102(2)(A), Title 42, U.S.Code. Section 1630.2, Title 29, C.F.R. "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Section 1630.2(i), Title 29, C.F.R. "Substantially limits" is defined in Section 1630.2(j)(1), Title 29, C.F.R. as:

"(i) Unable to perform a major life activity that the average person in the general population can perform; or

"(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

In addition, the C.F.R. provides several factors to consider in ascertaining whether an individual is substantially limited in a major life activity:

"(i) The nature and severity of the impairment;

"(ii) The duration or expected duration of the impairment; and

"(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Section 1630.2(j)(2), Title 29, C.F.R.

The United States Supreme Court recently held that corrective and mitigating measures must be considered when determining whether a plaintiff's impairment substantially limits one or more major life activities. *Sutton v. United Airlines, Inc.* (1999), 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450; *Murphy v. United Parcel Serv., Inc.* (1999), 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484. The United States Supreme Court has also indicated that the determination of the existence of a disability must be made on a case-by-case basis. *Albertsons, Inc. v. Kirkingburg* (1999), 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518. The Supreme Court of Ohio has also noted that whether a particular condition qualifies as a disability should be determined on a case-by-case basis. See *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 303, 658 N.E.2d 738, 742–743 (indicating that cancer may be a handicap depending on the circumstances of the afflicted individual). Several Ohio courts have recognized that depression may be a handicap under R.C. 4112.02 depending on the circumstances of the case. See, *e.g.*, *Beauchamp v. CompuServe, Inc.* (1998), 126 Ohio App.3d 17, 24, 709 N.E.2d 863, 867–868 (Tenth District); *Hayes v. Cleveland Pneumatic Co.* (1993), 92 Ohio App.3d 36, 42, 634 N.E.2d 228, 231–232 (Eighth District).

██ Appellant was diagnosed with major depression recurrent, which Dr. Moore explained is a serious medical disorder with both physical and psychological symptoms that is caused by the brain's inability to produce certain chemical neurotransmitters. This condition clearly qualifies as a mental impairment under R.C. 4112.01(A)(16)(ii), which indicates that a physical or mental impairment includes any mental or psychological disorder. Appellant argues that his impairment substantially limits the major life activity of working. To be substantially limited in the major life activity of working, a plaintiff must be significantly restricted in the ability to perform a class or broad range of jobs. *Sutton*; *McGlone* at 573, 697 N.E.2d 204. The evidence, even when viewed most favorably to appellant, indicates that his impairment does not limit him from performing a class or wide range of jobs.

However, the statutes merely require that appellant be substantially limited in *one or more* major life activities. Appellant also argues that his depression limits his ability to concentrate and think. In *Taylor*, the court found that thinking is a

major life activity. *Taylor* at 307. The plaintiff in *Taylor* suffered from bipolar disorder, a biological condition requiring medication and ongoing therapy. *Id.* at 308. Applying the federal regulations, directing a court to assess the nature and severity, duration and long-term impact of the impairment, the *Taylor* court concluded that there was a genuine issue of material fact as to whether the plaintiff was substantially limited in the major life activity of thinking because her condition was severe, not temporary, and was not completely controlled by medication. *Id.* at 309.

■ Here, like the plaintiff in *Taylor*, the evidence, when viewed most favorably to appellant, indicates that there is a genuine issue of material fact as to whether appellant's impairment, even when treated, substantially limits the major life activity of thinking. Appellant's impairment is a life-long biological disorder that has a tendency to recur especially when he is under stress. Appellant experienced several severe episodes over the years during which he was unable to concentrate, focus his attention, organize things, remember, think, or make decisions. When appellant experienced these symptoms, they persisted for several months. Dr. Moore indicated that appellant was substantially limited in his cognitive abilities during his 1996 recurrence of major depression. Appellant's impairment requires ongoing medication and therapy. Even when appellant had been on medication and in therapy for several months, he was still experiencing difficulty concentrating and thinking. Appellant indicated that he continues to suffer from these symptoms but that he is better able to cope with them due to the therapy and medication.

While appellant's impairment may not have been as severe as that of the plaintiff in *Taylor*, who experienced delusions and paranoia, appellees' attempt to distinguish appellant from the plaintiff in *Taylor* based on the fact that he was not hospitalized and could meet with his attorney lacks merit. The court noted in *Taylor* that an individual does not have to experience problems every day to be substantially limited because chronic, episodic conditions have a cumulative effect on an individual's ability to perform life functions when compared to the average person in the general population. *Taylor* at 309. Moreover, substantial limitations on major life activities do not have to rise to the level of "utter inabilities." *Id.* Given the severity, nature, duration, and long-term effects of appellant's impairment even when treated, we find that appellant has demonstrated a genuine issue of material fact that he is substantially limited in the major life activity of thinking and, consequently, that there is a genuine issue of material fact as to whether he is handicapped. Because of this finding, we need not address whether he is substantially limited in other major life activities such as eating or sleeping, or whether he was regarded as having a disability by appellees or has a record of having a disability.

II. A genuine issue of material fact remains as to whether appellees knew of appellant's disability.

■ Although appellees argue that they did not know of appellant's depression, there is ample evidence in the record to create a genuine issue of material fact as to appellees' knowledge of appellant's depression. Both appellant and his wife indicated that they told both Wolske and Blue, in 1991, that appellant was suffering from severe depression and required medication. Appellant discussed his condition and his medication with Wolske several times after 1991, in relation to some of the firm's cases. Additionally, DePalma indicated that appellant's depression and the fact that he was on anti-depressant medication was common knowledge around the firm. On May 23, 1996, appellant's wife informed DePalma that they were at Harding Hospital and that appellant would not be able to come to work. The next day, she discussed appellant's depression and his treatment at Harding with Blue. Subsequently, she also discussed appellant's depression with Wolske on June 2, 1996. Thus, a genuine issue of material fact remains.

III. A genuine issue of material fact remains as to whether appellant requested an accommodation.

■ The trial court held that appellant failed to propose an accommodation. It is undisputed that appellant did not personally request an accommodation. In *Pfost,* this court held that an employee has the duty of informing an employer of the employee's need for an accommodation. However, this court did not address, in *Pfost,* whether a third-party, on an employee's behalf, can request an accommodation or inform an employer of the employee's need for an accommodation. Federal courts, relying on the Equal Employment Opportunity Commission ("EEOC") compliance manual, have recognized that third parties, such as family members, friends, or health professionals, may request an accommodation on the employee's behalf. *Taylor* at 313 (employee's son could request an accommodation); *Bultemeyer* at 1286 (employee's psychiatrist could make a request for an accommodation). Additionally, the *Taylor* court, again citing to the EEOC compliance manual, indicated that the notice that the employee desires an accommodation does not have to be in writing, does not have to mention the ADA, and does not have to invoke the words "reasonable accommodation" as long as the notice makes it clear that the employee desires assistance for his or her disability. *Taylor* at 313. This flexibility is especially important when an employee is suffering from a mental illness impairing communication. *Id.; Bultemeyer* at 1286.

Appellant argues that he requested an accommodation through his wife. When she spoke to Blue on May 24, 1996, and Wolske on June 2, 1996, she told them of

appellant's condition and treatment, and indicated that appellant would need time off work to get better. Both Blue and Wolske told her that appellant should take all the time that he needed to get well. Wolske acknowledged in a memorandum he wrote regarding the conversation that appellant's wife asked about appellant's job and disability leave. Given that time off work was the specific accommodation that Wolske & Blue granted appellant during his 1991 episode of depression and that the same request was made here, we find that a genuine issue of material fact exists as to whether appellant requested an accommodation by means of his wife's communications with Blue and Wolske.

IV.  A genuine issue of material fact remains as to whether appellees made a good faith effort to assist appellant in seeking a reasonable accommodation.

█  As noted above, once an employee requests an accommodation, an employer is obligated to participate in the interactive process of seeking an accommodation. *Taylor* at 314; *Pfost.* The *Taylor* court indicated that all that the interactive process requires of an employer is that the employer make a good-faith effort to work with the employee to seek an accommodation. *Taylor* at 317. An employer may demonstrate its good faith by showing that it met with the employee, that it requested information about the employee's condition and limitations, that it asked the employee what he or she wanted, that it showed some indication of considering the employee's request, and that it offered and discussed alternatives if the initial request was too burdensome. *Id.* However, appellees offered no evidence that they attempted to interact with appellant in a good-faith effort to reach an accommodation.

█  When appellant's wife asked Blue and Wolske if appellant could take time off to get better, both told her that appellant should take all the time he needed to get well. However, this apparent effort to accommodate was belied by their subsequent actions. Appellees would not communicate with appellant when he called on Thursday, May 30, 1996, to discuss his situation. Appellant was then told by Blue's secretary that he could not speak to Blue unless Wolske was also on the phone. Although appellees scheduled a conference call with appellant for the next day, appellant was told that Blue and Wolske were unavailable when he called back at the designated time. Appellant was told to call again on Monday, June 3, 1996. Appellant's wife spoke to Wolske on Sunday, June 2, 1996, and asked if appellant could take leave to get well. She also requested information about appellant's medical benefits. Wolske would not discuss the status of appellant's employment with her and stated that it was not the time to talk about it. He also informed her that they were not to call appellant's secretary any more but were to discuss appellant's condition and status only with him or Blue. Appellant's wife told Wolske that appellant was not feeling well enough to

participate in the conference call scheduled for the next day, but Wolske told her that there had been a misunderstanding in that there was no conference call scheduled.

When appellant called later in the week to arrange a meeting with appellees, he was told by Blue's secretary not to come in during business hours. Instead, she arranged a meeting for 6:00 p.m. on Monday, June 10, 1996. The sole purpose of this meeting was to terminate appellant, according to the firm's office manager. Although appellant's wife called the morning of June 10, 1996, to report that appellant was not well enough to meet with appellees, she called back later to inform them that appellant could meet at 6:00 p.m. However, she was told that appellees were no longer available. The next communication appellant received from appellees was the letter terminating him delivered to his home with his personal items from his office on June 11, 1996.

When this evidence is viewed most strongly in appellant's favor, it creates a genuine issue of material fact as to whether appellees made a good-faith effort to assist appellant in seeking an accommodation. Appellees appear to have frustrated appellant's efforts to communicate with them and discuss any possible accommodations, and they ultimately terminated appellant before any such discussions could take place.

V. A genuine issue of material fact remains as to whether appellant could have been reasonably accommodated but for appellees' lack of good faith.

The employee always bears the burden of proving that he or she can still perform the essential functions of the job with or without a reasonable accommodation. *Taylor* at 317; *Bultemeyer* at 1284. The employer bears the burden of proving that any proposed accommodation is unreasonable. *Taylor* at 318; Ohio Adm.Code 4112–5–08(E)(1); *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610 (holding that accommodations are unreasonable if they place an undue hardship on the employer and that the burden of proving an undue hardship is on the employer).

However, in *Taylor*, the court indicated that, when an employer fails to participate in good faith in the interactive process of reaching a reasonable accommodation, it precludes consideration of possible alternatives for an accommodation. *Taylor* at 317. Thus, the employer must have participated in the process to some extent before it can argue that a reasonable accommodation is not possible. *Id.* The *Taylor* court stated:

"[B]ecause employers have a duty to help the disabled employee devise accommodations, an employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations. In making that determination, the

jury is entitled to bear in mind that had the employer participated in good faith, there may have been other, unmentioned possible accommodations." *Id.* at 317–318.

Because bad faith on the part of the employer precludes consideration of all possible accommodations and whether they would have been reasonable, the *Taylor* court held that summary judgment will typically be precluded when there is a genuine dispute as to whether the employer acted in good faith. *Id.* at 318. As noted above, there is a genuine issue of material fact as to whether appellees participated in good faith in helping appellant seek a reasonable accommodation, which, under the reasoning of *Taylor,* precludes summary judgment.

Even assuming *arguendo* that appellees had participated in good faith, there is a genuine issue of material fact as to whether there were accommodations available that would have allowed appellant to perform the essential functions of his job. With regard to an accommodation, Dr. Moore indicated that she would have recommended one to two months off work, with appellant starting back gradually with part-time hours at first and a reduced caseload. This accommodation assumes that appellant is taking anti-depressant medication and attending therapy sessions to learn coping skills to deal with stress. Dr. Moore never had a chance to propose this accommodation because appellees terminated appellant first. Dr. Moore expressed that she did not recommend that appellant return to work at Wolske & Blue due to the high stress but that appellant wanted to return to work. She noted that, if appellant could be relieved of some cases and his depression recognized by Wolske & Blue, then the environment at the firm would be more benign for appellant. According to Dr. Moore, appellant was capable of performing his job most of the time, but that appellant risked another episode of severe depression by returning to a high stress environment.

Appellees offer no evidence that an accommodation such as that suggested by Dr. Moore would have been unreasonable or that it would have placed an undue hardship on the firm. Instead, appellees argue that they had no duty to accommodate appellant because he could not perform the essential functions of the job with or without a reasonable accommodation. Appellees' arguments focus primarily on appellant's job performance in the months leading up to the 1996 episode to indicate that he was not qualified to perform the essential functions of the job. Appellees also point to the statements of Dr. Moore indicating her preference that appellant not return to the high stress environment of Wolske & Blue as evidence that he was unable to perform the essential functions of his job. However, we note that appellant satisfied the prerequisites for the position in that he is an attorney licensed to practice law in the state of Ohio, and that he held this position, which the firm tailored to fit his talents in discovery and depositions, for over eight years despite episodes of depression. Blue, who

worked most closely with appellant, said he did a very good job at what his job was. We also note that, in 1991, appellees were able to accommodate appellant by giving him three weeks of leave. Thus, genuine issues of material fact exist as to whether appellant could have been reasonably accommodated but for appellees' lack of good faith.

Because we find that there are genuine issues of material fact that appellant was disabled, that appellees knew of his disability, that appellees failed to make a good-faith effort to help appellant seek an accommodation, and that appellant could have been reasonably accommodated but for appellees' bad faith, summary judgment was not appropriate. Thus, the trial court erred by granting appellees' summary judgment motion. Consequently, appellant's four assignments of error are sustained.

In appellees' first cross-assignment of error, they assert that the trial court erred by dismissing their counterclaim for fraud under Civ.R 12(B)(6). We disagree.

On a motion to dismiss for failure to state a claim under Civ.R. 12(B)(6), a court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. The complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts that would warrant recovery. *Id.* This court has held that a party may not refer to evidence outside the complaint to prove that it is sufficient to state a claim in that the purpose of a Civ.R. 12(B)(6) motion is to test the sufficiency of the pleading itself. *West v. West* (Sept. 2, 1997), Franklin App. No. 96APE11–1587, unreported, 1997 WL 559477.

The theory of appellees' fraud claim is that appellant committed fraud by not informing appellees that he intended to quit while continuing to receive paychecks from the firm. The trial court granted the motion to dismiss because it found that appellees failed to plead fraud with particularity, as required by Civ.R. 9(B), and because there is no basis in Ohio law for appellees' fraud claim given that appellant was an at-will employee under no duty to inform appellees if he was seeking other employment.

Our review of the counterclaim supports the trial court's dismissal. Appellees failed to plead with particularity any false statements made by appellant, as well as the time and place they were made as required by Civ.R. 9(B). *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 3–4, 531 N.E.2d 318, 320–322. Additionally, as the trial court found, appellees offer no legal authority whatsoever supporting their claim that appellant was under a duty as an at-will employee to inform them if he was seeking other employment. As this court noted in

*Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 77, 603 N.E.2d 1126, 1128–1129, an at-will employee is free to seek work elsewhere. Moreover, appellees' argument that appellant should have filed a motion for a more definite statement rather than seeking dismissal also fails because the theory underlying appellees' counterclaim for fraud is unsupportable under any set of facts. Consequently, appellees' first cross-assignment of error is overruled.

In appellees' second cross-assignment of error, they argue that the trial court erred by dismissing, pursuant to Civ.R. 12(B)(6), their counterclaims for frivolous conduct under R.C. 2323.51. We disagree.

Appellees asserted one counterclaim for frivolous conduct under R.C. 2323.51 and one for violating the public policy underlying R.C. 2323.51. The trial court found that R.C. 2323.51 does not create a separate cause of action for frivolous conduct. The trial court noted that R.C. 2323.51(B)(2) requires that it be invoked by motion during the course of proceedings, rather than asserted as a cause of action, and is to be decided by a judge as a question of law, rather than by a jury. Thus, the trial court concluded that appellees' assertion of frivolous conduct as a cause of action in their counterclaim was premature and dismissed those counterclaims.

We agree with the trial court's determination that R.C. 2323.51 does not create a separate cause of action for frivolous conduct. Moreover, appellees offer no legal authority for their assertion of a cause of action arising from the public policy underlying R.C. 2323.51. Instead, appellees argue that, because appellant asserted a cause of action for wrongful discharge in violation of Ohio public policy, they should be able to assert a similar public policy argument under R.C. 2323.51. However, the difference is that the Supreme Court of Ohio has specifically recognized a cause of action for wrongful discharge in violation of public policy. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph three of the syllabus. Consequently, appellees' second cross-assignment of error is overruled.

In appellees' third cross-assignment of error, they argue that the trial court erred by overruling their motion to amend their counterclaim to assert an abuse of process claim. We disagree.

Under Civ.R. 15(A), a party may amend his or her pleading once as a matter of course before a responsive pleading is served but must obtain leave of the court or written consent of the opposing party to amend a pleading thereafter. A trial court's decision on a motion to amend a pleading is reviewed on an abuse-of-discretion standard. *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624–625. An abuse of discretion requires more than an error of law or judgment but, instead, it entails

an action of the trial court that is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

Appellees filed their counterclaim on July 30, 1998, and then filed an amended counterclaim on August 10, 1998. Appellees filed a motion to file an amended counterclaim *instanter* on August 27, 1998. Thus, it is clear that appellees had to obtain leave of the trial court to file the second amended counterclaim on August 27, 1998. The trial court denied this request, finding that a counterclaim for abuse of process was inconsistent with the factual assertions of their pleadings. The trial court noted that appellees had consistently argued in their pleadings that appellant's claims were frivolous and without merit. Because a cause of action for abuse of process is based on a proper legal proceeding with probable cause that is being perverted to accomplish an ulterior purpose (*Yaklevich v. Kemp, Schaeffer & Rowe Co.* [1994], 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph one of the syllabus), the trial court found that a cause of action for abuse of process was not warranted by appellees' own version of the facts.

■ The Supreme Court of Ohio has held that "[w]here a plaintiff fails to make a *prima facie* showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington* at syllabus. Although appellees argue that their abuse-of-process claim is substantively identical to the abuse-of-process claim that was determined to state a claim upon which relief could be granted in *Blank v. Securx, Inc.* (1997), 123 Ohio App.3d 248, 704 N.E.2d 21, *Blank* is clearly distinguishable in that the party asserting the abuse of process claim in *Blank* conceded that the plaintiff's initial complaint was proper and filed with probable cause. Here, as the trial court found, appellees have always maintained that appellant's claims were not warranted under existing law. Moreover, as appellant argues, appellees' request to amend their counterclaim was untimely in that it exceeded the time frame for leave to amend pleadings and assert counterclaims as provided in the trial court's February 11, 1998 entry revising the scheduling order. Thus, the trial court did not abuse its discretion in denying appellees leave to amend their counterclaim. Appellees' third cross-assignment of error is overruled.

In appellees' fourth cross-assignment of error, they argue that the trial court erred by overruling their motion to stay to allow for additional discovery under Civ.R. 56(F). We disagree.

The trial court held that appellees' motion to stay was moot given its dismissal of appellees' counterclaims and indicated that allowing the motion to be converted into a summary judgment motion and allowing more discovery would not yield a different result. Appellees, citing *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 4 OBR 367, 447 N.E.2d 100, argue that the trial court should have given them

additional time for discovery to respond to the motion to dismiss. In *Tucker,* the Supreme Court of Ohio held that a trial court must allow additional time for discovery when the party requests it, pursuant to Civ.R. 56(F), in the face of a summary judgment motion. *Id.* at 123, 4 OBR at 369, 447 N.E.2d at 102. Under Civ.R. 12(B), a motion to dismiss for failure to state a claim will be treated as a summary judgment motion under Civ.R. 56, if the motion to dismiss presents matters outside the pleading.

However, as appellant argues, appellees failed to demonstrate that appellant's motion to dismiss presented matters outside the pleadings, which would have allowed it to be treated as a summary judgment motion. Thus, Civ.R. 56(F) and *Tucker* are inapplicable. Additionally, as the trial court found, no further discovery would have resulted in a different result, since appellees' counterclaims were dismissed for failure to state a claim under any set of facts. Thus, as the trial court concluded, appellees' motion for stay is moot. Appellees' fourth cross-assignment of error is overruled.

Based upon the foregoing reasons, appellant's four assignments of error are sustained, and appellees' four cross-assignments of error are overruled. Consequently, the decision of the trial court granting the summary judgment motion of appellees is reversed, while the decision of the trial court dismissing appellees' counterclaims is affirmed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded*

TYACK and LAZARUS, JJ., concur