[Cite as *Taylor v. Ohio Dept. of Jobs & Family Servs.*, 2011-Ohio-881.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOY TAYLOR

     Plaintiff

     v.

OHIO DEPARTMENT OF JOBS AND FAMILY SERVICES

     Defendant
     Case No. 2008-05974

Judge Joseph T. Clark
Magistrate Lewis F. Pettigrew

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging interference with her rights under the Family and Medical Leave Act of 1993 (FMLA), as well as disability discrimination under R.C. 4112.02, the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} On January 7, 2008, plaintiff began working as an "account clerk 2" in defendant's Bureau of Accounting. Plaintiff sought and obtained the position after working as a "data technician" in another of defendant's bureaus since 2001. Plaintiff stated that she was under a great deal of stress when she began serving in the new position inasmuch as her husband was in Iraq on a military deployment, and his absence increased her responsibilities to their family and to two rental properties which they owned. Plaintiff testified that this stress was compounded by what proved to be a

---

[1]On August 18, 2008, the court issued an entry dismissing Count One of plaintiff's complaint, which alleged a violation of the National Labor Relations Act.

difficult transition into her new role with defendant. In particular, plaintiff stated that she did not get along well with the individual who was assigned to train her, Emily Noble, and that her supervisor, Tanya Carter, made "hostile" and unfair criticisms of her.

{¶ 3} Plaintiff testified that much of Carter's criticism centered upon telephone calls between plaintiff and her husband. Indeed, Carter testified that she met with plaintiff on January 10, 2008, after she observed plaintiff making several personal calls during her first week on the job. According to Carter, plaintiff explained that some of the calls were from her husband, who was able to call from Iraq only between 9:00 a.m. and noon, Eastern Standard Time. Carter stated that she informed plaintiff that she could use her "break time" or lunch to take personal calls, but that such calls were not permitted during work time. Carter testified that she provided plaintiff with a copy of defendant's telephone usage policy during this meeting.

{¶ 4} Carter further testified that on January 15, 2008, she observed plaintiff speaking in a "harsh" and "rude" tone to Noble. Carter stated that when she approached plaintiff and asked if there was a problem, plaintiff waved her off and said to leave her alone. Carter testified that she decided to walk away and address the matter later.

{¶ 5} On January 16, 2008, Carter conducted a "counseling session" with plaintiff and issued plaintiff a "counseling memo" in which Carter reprimanded plaintiff for her "rude and discourteous" behavior on the preceding day. (Defendant's Exhibit K.) In the memo, Carter also expressed concern that plaintiff continued to make excessive personal telephone calls even after Carter had spoken to her about this on January 10, 2008. Also during the counseling session, Carter issued plaintiff another memo to inform her that, because her sick leave balance had fallen below 16 hours, defendant's policy mandated that she provide verification from a physician for any future requests for sick leave until she accrued a balance of more than 16 hours. (Defendant's Exhibit J.)

**{¶ 6}** Carter testified that inasmuch as she found plaintiff's behavior to be "volatile" at times, she held the January 16, 2008 counseling session in the office of a supervisor, Renee Gossett, and asked Gossett to wait outside and intervene if plaintiff "got out of hand." Carter stated that plaintiff indeed raised her voice during the session and that Gossett consequently intervened.

**{¶ 7}** In contrast, plaintiff stated that she remained calm during the counseling session, and that Carter "yelled" at her and pointed a finger in her face. Plaintiff also testified that Gossett "smirked" at Carter upon entering the room which caused plaintiff to believe that she was "being set up." Plaintiff further testified that she found Carter's criticism of her during the session to be unwarranted.

**{¶ 8}** On January 31, 2008, another meeting was held between plaintiff, Carter, and Robin Harris, who was Carter's supervisor. Carter testified that she arranged the meeting to review defendant's "performance expectations" of plaintiff, and both Carter and plaintiff testified that the meeting was not disciplinary in nature.

**{¶ 9}** Plaintiff testified that as a result of stress from the foregoing issues at work, as well as the stress in her personal life, she contacted defendant's Employee Assistance Program (EAP) around the end of January 2008. Plaintiff stated that she spoke with an EAP counselor and discussed the problems at work, her husband's deployment, and the difficulty in managing both her own household and her rental properties. Plaintiff stated that as a result of her discussions with the EAP counselor, she decided to request leave under the FMLA in order "to get myself together."

**{¶ 10}** On February 12, 2008, plaintiff met with Antoinette Franklin (then known as Antoinette Adams), who was a "personnel coordinator 2" and "assistant FMLA coordinator" for defendant. Plaintiff and Franklin both testified that plaintiff inquired about the process for requesting FMLA leave, and that Franklin consequently issued plaintiff a "certification" form to be completed by plaintiff and her physician, as well as an instructional cover letter. (Plaintiff's Exhibits 2, 3; Defendant's Exhibits G, H.)

{¶ 11} Plaintiff testified that after obtaining the paperwork from Franklin, she visited her physician during her lunch break. According to plaintiff, her physician diagnosed her with anxiety and depression and completed the certification form, wherein he stated that plaintiff was being prescribed both an antidepressant and "weekly counseling," and that "[plaintiff] will be off 1-2 days/week for 4-12 weeks for treatment." (Plaintiff's Exhibit 3; Defendant's Exhibit H.)

{¶ 12} After the appointment, plaintiff returned to the office and delivered the certification form to Franklin. However, Franklin testified that upon review of the certification form, she determined that it did not detail plaintiff's treatment schedule with sufficient clarity for defendant to know when plaintiff would be absent from work. Specifically, Franklin stated that the certification needed at least to indicate which days of the week that plaintiff planned to be absent for treatment and that, while plaintiff told her that the days would be Thursdays and Fridays, this information needed to be confirmed by plaintiff's physician.

{¶ 13} Franklin testified that she telephoned plaintiff that afternoon and told her that defendant could not process her request for FMLA leave until her physician provided the additional information. In contrast, plaintiff testified that Franklin did not ask for more information, but instead told her that she could only receive one to two hours of leave per week rather than the requested one to two days per week. Plaintiff stated that as a result of this conversation with Franklin, and inasmuch as one to two hours per week was not sufficient, she considered her request for leave to have been denied.

{¶ 14} Plaintiff stated that her level of stress at the time was such that she could not carry out her responsibilities at work without the requested leave. According to plaintiff, the stress prevented her from sleeping and caused her to cry and break out in hives. On February 14, 2008, plaintiff submitted a written resignation to Carter, effective February 28, 2008. (Defendant's Exhibit C.) Plaintiff testified that she had an offer of

employment at that time, pending security clearance, from the United States Department of Defense.

**{¶ 15}** Later on February 14, 2008, Carter wrote plaintiff a letter to acknowledge her resignation and confirm that her last day of work would be February 28, 2008. (Plaintiff's Exhibit 5; Defendant's Exhibit M.)  Carter testified that plaintiff's resignation came as a surprise to her, given that plaintiff had performed her job well and corrected the behaviors that were problematic earlier in her tenure.

**{¶ 16}** Plaintiff stated that in spite of her resignation, she decided to pursue a union grievance concerning her request for FMLA leave because she "wanted it to be known" that her request had been denied.  Plaintiff testified that in order to take such action, she contacted Franklin on or about February 25, 2008, and requested a letter formally denying her request for FMLA leave, but that Franklin told her the request had not been denied and could not be processed until plaintiff's physician provided a treatment schedule.  Franklin issued plaintiff a letter on February 25, 2008, which reiterated the need for additional information and stated that such information had been requested of plaintiff on February 12, 2008.  (Defendant's Exhibit I.)

**{¶ 17}** On February 26, 2008, plaintiff filed a grievance concerning her request for FMLA leave.  (Plaintiff's Exhibit 4; Defendant's Exhibit D.)  Also on that day, plaintiff filed another grievance in which she stated that "her supervisor has caused her undue stress which has resulted in her crying on a daily basis; breaking out in hives; being placed on an anti-depressant; loss of sleep; and not having the ability to grasp her job to her full potential, in which the end result has been submitting her resignation to [defendant]."  (Defendant's Exhibit E.)  On March 6, 2008, the union withdrew the grievance that concerned plaintiff's request for FMLA leave.  (Defendant's Exhibit F.)  On March 1, 2008, Carter "denied" the other grievance, and there is no evidence that the grievance was pursued any further.  (Defendant's Exhibit O.)

**{¶ 18}** On May 9, 2008, plaintiff filed her complaint in the instant case, alleging that defendant interfered with her rights under the FMLA, and that as a result of

defendant's alleged failure to accommodate her request for FMLA leave, her subsequent resignation amounted to a constructive discharge in violation of R.C. 4112.02, the ADA, and the Rehabilitation Act.

{¶ 19} With respect to plaintiff's FMLA claim, "[t]he FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.* (C.A.6, 2005), 424 F.3d 481, 485, quoting 29 U.S.C. 2612(a)(1)(D). FMLA leave may be taken by an eligible employee with a serious health condition "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. 2612(b).

{¶ 20} In order for an employee to establish that an employer interfered with her rights under the FMLA, the employee must show that: "(1) [she] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [her] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [she] was entitled." *Walton*, supra.

{¶ 21} The central dispute as to plaintiff's FMLA claim is whether defendant denied her request for FMLA leave. Plaintiff testified that shortly after she submitted her certification form to Franklin on February 12, 2008, Franklin contacted her by telephone, orally denied her request for one to two days off per week, and informed her that she would be approved for no more than one to two hours of leave per week. Plaintiff stated that upon the conclusion of this telephone conversation, she believed that her request for FMLA leave was denied.

{¶ 22} Franklin, however, described their conversation differently. Franklin testified that she neither denied plaintiff's request for FMLA leave, nor informed plaintiff that she would be entitled to only one to two hours of leave per week. Rather, Franklin stated that she informed plaintiff that the certification form did not sufficiently describe

plaintiff's treatment schedule insofar as it did not identify the days of the week on which she would be absent, and that her physician needed to furnish such information before defendant could process her request.

**{¶ 23}** Franklin further stated that it was defendant's policy to issue a formal letter to any employee whose request for FMLA leave was denied. Franklin stated that no such letter was issued to plaintiff, and that when plaintiff requested such a letter from her on February 25, 2008, she responded instead with the letter that reiterated the need for plaintiff's physician to furnish a treatment schedule.

**{¶ 24}** Although the federal regulations concerning the FMLA were revised subsequent to the events at issue in this case, "[a]dministrative regulations, whether interpretive or legislative, are presumed to be prospective, not retroactive." *Randolph v. Grange Mut. Cas. Co.*, 185 Ohio App.3d 589, 2009-Ohio-6782, ¶33. Accordingly, the revised regulations do not apply in this case.

**{¶ 25}** Former 29 C.F.R. 825.305 provided, in part:

**{¶ 26}** "(a) An employer may require that an employee's leave * * * be supported by a certification issued by the health care provider of the employee * * *.

**{¶ 27}** "* * *

**{¶ 28}** (d) * * * The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency."

**{¶ 29}** Pursuant to former 29 C.F.R. 306(b)(3)(i)(B), the employer may require that such certification identify "[i]f the patient's incapacity will be intermittent, or will require a reduced leave schedule, an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any." See also 29 U.S.C. 2613(b).

**{¶ 30}** Further, 29 C.F.R. 825.302(f) provides, in part, that "[a]n employee shall advise the employer, upon request, * * * of the schedule for treatment, if applicable."

**{¶ 31}** With regard to the disputed February 12, 2008 telephone conversation between plaintiff and Franklin, the court finds that the testimony of Franklin was more credible than plaintiff's testimony. Accordingly, the court finds that Franklin did not deny plaintiff's request for FMLA leave. The court further finds both that Franklin reasonably requested that plaintiff provide certification from her physician of her actual or estimated treatment schedule and that plaintiff had a duty to furnish the requested information but failed to do so. As such, plaintiff has not shown that defendant interfered with her entitlement to FMLA benefits. Judgment in favor of defendant shall be recommended as to plaintiff's FMLA claim.

**{¶ 32}** Plaintiff's remaining claims allege violations of R.C. 4112.02, the ADA, and the Rehabilitation Act.

**{¶ 33}** R.C. 4112.02 states, in part:

**{¶ 34}** "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

**{¶ 35}** In similar fashion, the ADA provides, at 42 U.S.C. 12112(a):

**{¶ 36}** "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

**{¶ 37}** The Rehabilitation Act, which prohibits discrimination against the disabled in federally funded programs, provides at 29 U.S.C. 794(a):

**{¶ 38}** "No otherwise qualified individual with a disability in the United States * * * shall, solely by reason of her or his disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *."

{¶ 39} To establish a prima facie case of discrimination under the ADA or Rehabilitation Act, plaintiffs must demonstrate "that they are or are perceived to be handicapped within the definitions of each of the acts, that they are otherwise qualified for the job, and that they were discriminated against on the basis of their disability." *Andrews v. State of Ohio* (C.A.6, 1997), 104 F.3d 803, 807. Under the Rehabilitation Act, a plaintiff must also demonstrate that the defendant receives federal funds. Id.

{¶ 40} "To establish a prima facie case of handicap discrimination [under R.C. 4112.02], the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571, 1998-Ohio-410.

{¶ 41} Given the similarity between the ADA, the Rehabilitation Act, and Ohio law regarding disability discrimination, the analyses of such claims are essentially the same. See *Andrews*, supra; *Cox v. True N. Energy, LLC* (N.D.Ohio 2007), 524 F.Supp.2d 927, 943; *Canady v. Rekau & Rekau, Inc.*, Franklin App. No. 09AP-32, 2009-Ohio-4974, ¶32.

{¶ 42} For her prima facie case, plaintiff alleges that: 1) her anxiety and depression constituted a disability; 2) she could have performed the essential functions of her job if defendant had accommodated her request for FMLA leave; and 3) her resignation amounted to a discriminatory, adverse employment action in the form of a constructive discharge.

{¶ 43} With respect to the first element of plaintiff's prima facie case, the version of 42 U.S.C. 12102(1) which was in effect at all times relevant defines "disability" for purposes of the ADA as:

{¶ 44} "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

{¶ 45} "(B) a record of such an impairment; or

{¶ 46} "(C) being regarded as having such an impairment."[2]

{¶ 47} Plaintiff contends that her anxiety and depression substantially limited one or more of her major life activities, thus constituting a disability. "When determining whether an individual is substantially limited in performing a major life activity, courts should consider three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Novak v. MetroHealth Med. Ctr.* (C.A.6, 2007), 503 F.3d 572, 581, citing 29 C.F.R. 1630.2(j)(2).

{¶ 48} To qualify as a substantial limitation under the former version of 42 U.S.C. 12102(1), the impact of an impairment must be permanent or long-term. *Toyota Motor Mfg., Ky., Inc. v. Williams* (2002), 534 U.S. 184, 198. "Typically, 'short-term, temporary restrictions are not substantially limiting.'" *Brown v. BKW Drywall Supply, Inc.* (S.D.Ohio 2004), 305 F.Supp.2d 814, 826, quoting *Roush v. Weastec, Inc.* (C.A.6, 1996), 96 F.3d 840, 843; see also *Canady*, supra, at ¶33 ("Temporary impairments, with little or no long-term or permanent impact, are usually not disabilities"). Depression may constitute an impairment under the ADA, provided that it causes a substantial limitation on a major life activity. *Swanson v. Univ. of Cincinnati* (C.A.6, 2001), 268 F.3d 307, 314; see also *Toyota Motor*, supra, at 198 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment").

---

[2]This statute was amended effective January 1, 2009, by the ADA Amendments Act of 2008; however, the amendments do not apply retroactively and the court shall apply the prior version of the statute. See *Milholland v. Sumner Cty. Bd. of Ed.* (C.A.6, 2008), 569 F.3d 562, 565.

{¶ 49} Although plaintiff was diagnosed with anxiety and depression, she testified that she requested FMLA leave with the expectation that her impairment would be resolved within a few weeks, and that she needed the leave simply "to get myself together." Indeed, plaintiff testified that her anxiety and depression abated after leaving defendant's employ and that she remained on the antidepressant medication for only about two months. In general, such a short-term impairment does not constitute a disability under the ADA. See *Novak*, supra. Accordingly, the court finds that plaintiff failed to establish that she was disabled for purposes of R.C. 4112.02, the ADA, or the Rehabilitation Act.

{¶ 50} Moreover, even if plaintiff had established that she was disabled, plaintiff failed to prove the remaining elements of her prima facie case. Concerning the second element, for which she alleges that her resignation amounted to a constructive discharge, "[c]ourts generally apply an objective test in determining when an employee was constructively discharged, *viz.*, whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. * * * In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Mauzy v. Kelly Services*, 75 Ohio St.3d 578, 588-589, 1996-Ohio-265.

{¶ 51} In explaining the circumstances of her resignation, plaintiff testified that the stress in her personal and professional lives was such that she could not carry out her responsibilities at work without being granted the requested FMLA leave. As the court has previously found, though, defendant did not deny plaintiff's request for FMLA leave. To the extent that plaintiff stated that she was distressed by hostility that she perceived from Carter and by ongoing disagreements with Noble, the court notes that while certain incidents may have been personally or professionally upsetting to plaintiff, the circumstances described by her were not objectively threatening or so egregious or pervasive as to render her working conditions intolerable. Carter testified, credibly, that

her "counseling session" and other management practices pertaining to plaintiff were appropriate and professional, and that the memo she issued to plaintiff regarding sick leave was mandated by defendant's policy. Further, any conflict between plaintiff and Noble was resolved when another employee replaced Noble as plaintiff's trainer in January 2008, well before plaintiff's resignation.

{¶ 52} Additionally, the evidence does not show that plaintiff was in imminent danger of being terminated. In fact, Carter testified that she was taken aback by plaintiff's resignation, and that plaintiff had performed her job well and corrected the behaviors that were problematic earlier in her tenure. Based upon the totality of the evidence, the court concludes that plaintiff voluntarily resigned her position and that she was not constructively discharged.

{¶ 53} Going to the third prima facie element, "[b]oth federal and Ohio law impose a duty on employers to make reasonable accommodations for their employees with disabilities." *Rector v. Ohio Bur. of Workers' Comp.*, Franklin App. No. 09AP-812, 2010-Ohio-2104, ¶12. "[T]he duty of an employer to make reasonable accommodations also mandates that the employer interact with an employee in a good faith effort to seek a reasonable accommodation." *Shaver v. Wolske & Blue* (2000), 138 Ohio App.3d 653, 664.

{¶ 54} "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Id. An employer shows a good-faith attempt to comply when the employer meets with the employee, requests information about the conditions and limitations, and asks what accommodation is being sought. Id. at 669.

**{¶ 55}** Plaintiff testified that the only accommodation she requested was the request for FMLA leave that she submitted to Franklin on February 12, 2008. "Honoring an employee's * * * FMLA leave request, where her physician has recommended the leave for the beneficial effect it might have on the employee's long-term ability to function properly at work, can be a reasonable accommodation itself * * *." *Swanson v. Senior Resource Connection* (S.D.Ohio 2003), 254 F.Supp.2d 945, 961. However, the court has found that defendant did not deny plaintiff's request for FMLA leave, and that Franklin instead reasonably requested that plaintiff arrange for her physician to provide a treatment schedule. The court finds that this modest request by Franklin constituted a good-faith effort to assist plaintiff in obtaining an accommodation, but that plaintiff elected to resign her employment rather than cooperate with Franklin.

**{¶ 56}** For the foregoing reasons, the court finds that plaintiff failed to prove any of her claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
LEWIS F. PETTIGREW
Magistrate

cc:

Douglas R. Folkert
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Kendall D. Isaac
341 South Third Street, Suite 10
Columbus, Ohio 43215

RCV/cmd
Filed January 25, 2011
To S.C. reporter February 22, 2011