OPINION
{¶ 1} Plaintiff, Richard Allin, appeals from a summary judgment for Defendant, Hartzell Propeller, Inc. ("Hartzell"), on Allin's claim for relief alleging a violation of the Consumer Sales Practices Act, R.C. 1345.02.
 {¶ 2} Hartzell manufactures airplane propellers. Allin purchased an airplane equipped with a Hartzell propeller in 1987. It was one of a type designated a "V-blade" propeller.
 {¶ 3} In 1997, the Federal Aviation Administration ("FAA") published regulations requiring frequent inspections of V-blade propellers. That made the aircraft on which those propellers are used more expensive to own and operate.
 {¶ 4} In 1998, Hartzell advertised a program to upgrade V-blade propellers it had manufactured to "MV-blade" propellers, which require less frequent inspections. Allin sent his propeller to Hartzell for that purpose, through Hartzell's agent, Tiffin Aire.
 {¶ 5} Hartzell examined Allin's blade and concluded that it did not qualify for an MV-blade upgrade. Hartzell further concluded that one of the propeller's two blades was unusable as a V-blade, and was therefore "scrap." The propeller and blades were returned to Allin.
 {¶ 6} The specifications for V-blade propellers require the shank of its blades, where the blade connects to the center hub of the propeller, to have a "shot peened" surface. Shot peening is a process in which a metal surface is bombarded by bits of metal, producing a roughened surface that strengthens the blade.
 {¶ 7} The shanks of the two V-blades on Allin's propeller had shot peened surfaces when Allin sent the blade to Hartzell. When Allin received the propeller back from Hartzell, the blade's shanks were smooth and shiney. That change rendered the blades unusable, according to Allin.
 {¶ 8} Allin commenced an action in Geauga County, alleging that Hartzell had committed an unfair or deceptive act or practice in violation of R.C. 1345.02(A) when Hartzell distributed advertising materials promoting its propeller blade upgrade program that failed to disclose that a propeller's blades could be damaged in that process in the way that Allin's blades were.
 {¶ 9} Hartzell moved for a change of venue to Miami County, where Hartzell's business is located. Allin filed a motion contra, supported by his own affidavit dated January 3, 2000, relating facts concerning his transaction with Hartzell.
 {¶ 10} The Geauga County court granted Hartzell's motion for change of venue and the case was transferred to the Miami County Court of Common Pleas. Once there, the case was transferred again to the Municipal Court of Miami County, which referred the case to its magistrate for trial pursuant to Civ.R. 53(C)(1)(a).
 {¶ 11} After further pleadings were filed, Hartzell moved for summary judgment. Hartzell submitted the affidavit of its employee, Jerry Barbee, who described the MV-blade conversion process in considerable detail. Barbee also stated that conversion of Allin's V-blade propeller was not attempted because his inspection of the propeller's blades caused Barbee to conclude that its conversion to an MV-blade propeller was unfeasible. Barbee averred that his examination of the propeller blades was "nondestructive."
 {¶ 12} The magistrate overruled Hartzell's motion for summary judgment. The case was thereafter returned to the trial court's docket on May 5, 2001. A visiting judge was assigned to preside over the trial. A pretrial conference by telephone was scheduled for April 29, 2002.
 {¶ 13} On February 29, 2002, Hartzell renewed the motion for summary judgment the magistrate had overruled. Additional answers to interrogatories and responses to requests for admission were by then also before the court, though it appears that they are not germane to the summary judgment the court subsequently granted.
 {¶ 14} The Transcript of Docket and Journal Entries does not reflect whether the scheduled pretrial conference was held on April 29, 2002. However, on May 2, 2002, Allin filed a written motion asking the court to reconsider the decision it had announced at the pretrial conference granting Hartzell's motion for summary judgment. Attached to Allin's motion were two further affidavits, one his own and the other his attorney's. Subsequently, on July 5, 2002, Allin filed another affidavit of his own. Hartzell asked the court to strike the three affidavits that Allin had filed after the trial court announced its decision because they were untimely, and because parts of the statements they contain are hearsay.
 {¶ 15} On September 30, 2002, the court journalized its written decision granting Hartzell's motion for summary judgment. The court did not rule on Hartzell's timeliness objection. However, the court found that some of the evidence in the affidavits Allin submitted is hearsay, and therefore not competent, because of the affiant's lack of personal knowledge of the matters related. The court concluded that Allin's remaining evidence failed to rebut the statements in the Barbee affidavit so as to preserve a genuine issue of material fact for trial.
 {¶ 16} Allin filed a timely notice of appeal. He presents two assignments of error for review.
 FIRST ASSIGNMENT OF ERROR {¶ 17} "The trial court erred in granting defendant's motion for summary judgment."
 {¶ 18} R.C. 1345.02(A) states: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."
 {¶ 19} Paragraph (C) of R.C. 1345.02 instructs courts to "give due considerations and great weight to federal trade commission orders, trade regulations rules and guides", and to federal court interpretations of the Federal Trade Commission Act's prohibition of unfair or deceptive acts or practices. It has been held that "[t]he Commission will find deception if there is a representation, omission or practice that islikely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Southwest Sunsites, Inc. v. Federal TradeCommission (1986), 785 F.2d 1431, quoting Cliffdale Associates, Inc., 3 CCH Trade Reg. Rep. 22, 137 (1984).
 {¶ 20} The theory of Allin's CSPA claim for relief is that he was misled by Hartzell's failure to disclose in its advertising materials promoting its MV-blade upgrade process that the shot-peened surface of a V-blade's shanks might or would be altered in the manner that his were. Hartzell does not deny that its promotional materials failed to disclose that prospect. Rather, the gist of Hartzell's contentions is that its V-blade modification program, including prior inspections to determine whether a V-blade propeller could be upgraded to MV-Blade status, did not cause the harmful alterations of the blades of his propeller which Allin alleges. Absent such harm, or its prospect, no detrimental or adverse condition existed that it has a duty to disclose, according to Hartzell.
 {¶ 21} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morrisv. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. The trial court abuses its discretion if it fails to consider all the evidence before it. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326.
 {¶ 22} Discussing the analytical process that Civ.R. 56(C) imposes, Professors Klein and Darling write:
 {¶ 23} "The first step in the process may be called the gross test for factual conflict. In this step, the court simply accepts as true all evidence put before it, no matter how improbable it might be. Then, after isolating the material factual issues from the immaterial ones, the court compares the evidence on the material issues. If the evidence is in conflict, there is a genuine issue of material fact, and the motion for summary judgment must be denied. As noted above, however, the conflict must arise from irreconcilable affirmative allegations of fact, that is, affirmative allegations of fact appearing in counteraffidavits, discovery papers, or other papers. No conflict arises from mere denials of the fact presented by the movant in its pleadings. If the motion survives the gross comparison test, the court proceeds to the second step, the refined test."
 {¶ 24} "At this stage the court examines the evidence for a clear and definite picture of the controversy between the parties. If the factual pattern remains obscure, or the court is doubtful that it has all the facts before it, or the undisputed facts give rise to competing inferences, the court should overrule the motion for summary judgment. In performing this test, the court construes the evidence most strongly in favor of the nonmoving party." Baldwin's Ohio Civil Practice, Sections AT56-28, AT 56-29.
 {¶ 25} The evidence the court may consider is that presented in the "pleadings, depositions, answers to interrogatories, written admission, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). Those items are not timely filed by a party opposing a Civ.R. 56(C) motion if they are not filed prior to the date of any hearing on the motion that was ordered, and in that event the court may reject the item or items as untimely. State ex rel. Baran v. Fuerst (1992), 65 Ohio St.3d 416. Also, it is fundamental that the evidence offered must be admissible under the Rules of Evidence for the court to rely on it.
 {¶ 26} Hartzell complains that the trial court should not have considered the three affidavits Allin submitted, his two and one by his attorney, after the court had announced its decision in Hartzell's favor at the April 29, 2002 pretrial conference. Hartzell objected to the evidence as untimely after it was filed.
 {¶ 27} The court didn't rule on Hartzell's timeliness objection, and a failure to rule is generally construed on appeal to be an implicit denial of the objection concerned. It is not clear that the court ordered a hearing on Hartzell's motion to coincide with or as a part of the pretrial conference at which the court announced its decision, so the limitation in Fuerst probably would not apply. In any event, the court was authorized to consider Allin's evidentiary materials, and we cannot find that the court abused its discretion when it did.
 {¶ 28} The court did reject some of Allin's evidence as hearsay, which is inadmissible per Evid.R. 802. Specifically, the court excluded evidence in Allin's and his attorney's affidavits concerning what an employee of Tiffin Aire, Hartzell's agent, had said or would say, because of the affiant's lack of personal knowledge. The court was correct in its ruling. The remaining evidence, which appears to be based on the personal knowledge of the affiants, was properly before the court.
 {¶ 29} The affidavit of Hartzell's employee, Barbee, contains extensive descriptions of Hartzell's MV-blade upgrade program and the steps an upgrade involves. Barbee states that Allin's propeller could not be upgraded, and wasn't, because from his inspection of the propeller's blades Barbee concluded that an upgrade was not feasible.
 {¶ 30} That no upgrade was performed is not in dispute. What is in dispute is what, if anything, Hartzell did that might have altered the surfaces of the shanks of the blades of Allin's propeller. In that regard, Barbee states:
 {¶ 31} "16. On March 25, 1999, I inspected both blades. As reflected on Exhibits `A' and `B,' there is a series of steps taken in the inspection process to determine whether or not the shanks can be modified from V to MV. I personally performed these steps on both blades.
 {¶ 32} "17. As reflected in both Exhibits `A'[1] and `B,' the first operation is to clean the shank. This task is performed by placing the blade in a chamber and blowing soft plastic media on the blade to clean debris, grease, dirt, etc. so that the blade and shank are clean for purposes of measuring and further work. This task is non-destructive and does not change the dimensions of the blade. It merely cleans the blade. I performed this task on both blades.
 {¶ 33} "30. I was the only person who worked on these blades. None of the inspection tests I performed are destructive nor do they change the dimensions of the blades. Nothing I or anyone else at Hartzell did while the blades were at Hartzell rendered these blades any more or less suitable for modification from V to MV than they were when they arrived at Hartzell."
 {¶ 34} Barbee's statements that the procedures he performed were non-destructive are conclusory, not affirmative allegations of fact sufficient to withstand any contradictory allegations of fact in Allin's pleadings and the proof he submitted. Those facts and the inferences reasonably drawn from them must be construed most strongly in Allin's favor. Civ.R. 56(C).
 {¶ 35} In the affidavit he filed in the Geauga County Court in opposition to Hartzell's motion for change of venue, Allin states:
 {¶ 36} "3. I am the registered owner of a Beechcraft Bonanza single engine airplane. The FAA registration number for this airplane is N527RA.
 {¶ 37} "4. The airplane is owned by me for my personal use.
 {¶ 38} "5. The airplane is equipped with a propeller made by defendant.
 {¶ 39} "6. In 1997, I received through the U.S. mail at my residence a copy of Airworthiness directive `AD' 97-18-02. This AD note applied to the propeller made by defendant which I own. The AD required repeated and costly inspections of the propeller in order to use it.
 {¶ 40} "7. In 1998, I received through the U.S. mail at my residence documents published by the defendant or by others with information supplied by the defendant which induced me to decide to obtain the MV upgrade for my propellor. The information was deceptive because it did not reveal the substantial risk of destruction of propellor blades, entailed in the MV upgrade program."
 {¶ 41} In a later affidavit of May, 2002, Allin stated that he sent his propeller to Hartzell through its agent, Tiffin Aire, and that:
 {¶ 42} "21. I directed Tiffin Aire to send the blades to Hartzell for the MV upgrade.
 {¶ 43} "22. The MV upgrade was not accomplished because Hartzell determined that the blade shank were undersized.
 {¶ 44} "23. I received that blades back from Tiffin Aire. I found that the shot peened surface on the shank of the blade had been removed.
 {¶ 45} "24. The removal of the shot peened surface rendered the blades unairworthy as V blades.
 {¶ 46} "25. At the time, I ordered the MV upgrade, I did so for two reasons, first, the MV upgrade would eliminate the need for a repetitive inspection called for by the latest AD. Second, Hartzell offered special pricing with an expiration date of September 20, 1999, for performing the MV upgrade.
 {¶ 47} "26. Had I known that Hartzell could render my blades unairworthy in attempting to upgrade them, I never would have agreed to proceed with the MV upgrade."
 {¶ 48} Hartzell complains that Allin's statements do not foreclose the possibility that some happening or event other than those described by Barbee caused the damage to his blades that Allin alleges. That is correct, but it was not a part of the burden that Hartzell's motion imposed on Allin. That burden was to rebut only those factual assertions on which Hartzell relied which, if believed and uncontradicted, negate one or more of the elements necessary to Allin's CSPA claim for relief.
 {¶ 49} Barbee asserts in his affidavit that the cleaning process he performed did not alter the "dimensions" of the blades on Allin's propeller. Allin's claim is that the shot-peened surfaces of the shanks of the two blades were changed to smooth surfaces. One may reasonably infer that such an alteration may happen without changing the dimensions of the blades. Indeed, at oral argument Hartzell's counsel conceded that the cleaning process Barbee employed most likely produced the alterations of the surface finish of the blades of which Allin complains.
 {¶ 50} The facts on which Hartzell relied in support of its motion for summary judgment presented a factual pattern that was as yet obscure in relation to Allin's claims and evidence. Because any doubt concerning these facts must be resolved in favor of the party against whom the motion for summary judgment is made, on this record a genuine issue of material fact remains for determination. The trial court erred when it granted Hartzell's motion for summary judgment.
 {¶ 51} The first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR {¶ 52} "The trial court abused its discretion in granting the defendant's motion for change of venue."
 {¶ 53} A civil action may be commenced in any county where venue properly lies. The factors that determine proper venue are set out in Civ.R. 3(B)(1)-(12). When an action is commenced in a county other than one to which any of those factors apply, the court must transfer the action to a court of a county in which venue lies. Civ.R. 3(C)(1). When according to the Civ.R. 3(B) factors venue may properly lie in two or more counties, discretion is conferred on a trial court to determine which county should have priority for transfer of venue to that county.Railroad Ventures, Inc. v. Drake (2000), 138 Ohio App.3d 660.
 {¶ 54} The trial court's decision to transfer a case to another venue will not be reversed absent an abuse of discretion. McCoy v.Lather (1985), 17 Ohio St.3d 37. "An abuse of discretion involves more than an error of law or judgment, it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary." FranklinCnty. Sheriff's Dept. v. State Emp. Relations Bd. (1992),63 Ohio St.3d 498, 506.
 {¶ 55} Allin commenced his action in Geauga County, where he resides. Hartzell's promotional materials which are the subject of Allin's CSPA claim for relief were mailed by Hartzell to Allin's residence. Therefore, Hartzell conducted the activities which gave rise to Allin's claim for relief in Geauga County, and venue properly lies there. Civ.R. 3(B)(3). Presumably, the propeller is in Geauga County, in which event venue also properly lies there because the tangible personal property which is the subject of the action is situated there. Civ.R. 3(B)(5).
 {¶ 56} Venue also properly lies in Miami County because Hartzell's principal place of business is in Miami County. Civ.R. 3(B)(2). It is also the county in which the claim for relief arose, to the extent that the claim involves evidence of how the alleged damage to Hartzell's propeller occurred. It appears that the Geauga County court was of the view that a jury trial involving the technical matter of Hartzell's blade modification program could better proceed for those reasons in Miami County, giving it priority over Geauga County, where the venue factors are more transitory and not actually in dispute. We see no abuse of discretion in the transfer of the case to Miami County.
 {¶ 57} The second assignment of error is overruled.
 Conclusion {¶ 58} Having sustained the first assignment of error, we will reverse the judgment from which this appeal was taken and remand the case to the trial court for further proceedings in the action before it.
BROGAN, J. and WOLFF, J., concur.
[1] 1 Exhibits A and B are Barbee's working notes.